Rod Andreason, UT #8853
KIRTON MCCONKIE PC
Kirton McConkie Building
50 East South Temple, Suite 400
Salt Lake City, UT 84111
Telephone:  (801) 328-3600
Facsimile:  (801) 321-4893
Email:  randreason@kmclaw.com

Bijan Amini, NY #1989052, *Admission Pro Hac Vice Pending*
Avery Samet, NY #4245965, *Admission Pro Hac Vice Pending*
STORCH, AMINI & MUNVES PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
Telephone: (212) 490-4100
Fax: (212) 490-4208
Email:  bamini@samlegal.com
            asamet@samlegal.com

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| MRS. FIELDS FRANCHISING, LLC, a Delaware limited liability company,<br><br>  Plaintiff,<br><br>v.<br><br>MFGPC, INC., a California corporation,<br><br>  Defendant. | **COMPLAINT**<br><br>Civil No.  2:15-cv-00094-BCW<br><br>Judge  Brooke C. Wells |

Plaintiff Mrs. Fields Franchising, LLC ("MFF"), by its counsel, as and for its complaint against MFGPC, Inc. ("MFGPC") hereby alleges as follows:

## INTRODUCTION

1.     MFF is the owner of the "Mrs. Fields" trademark, one of the most recognizable food-related marks in the world.  MFF had granted MFGPC an exclusive license to the *Mrs. Fields* mark to produce and sell popcorn as more fully described below.  However, MFGPC has not paid any royalties in over two years and, among other defaults, has failed to submit timely and periodic royalty reports.  After MFF declared the license to be terminated in December 2014, MFGPC challenged the grounds for termination.  By this action, MFF seeks a declaratory judgment that its license agreement with MFGPC was properly terminated.

## PARTIES

2.     MFF is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 8001 Arista Place, Suite 600, Broomfield, Colorado 80021.  MFF's member is a citizen of Delaware and Colorado.

3.     MFGPC is a California corporation with its principal place of business at 25062 Whitespring, Mission Viejo, California 92692, according to the database maintained by the California Secretary of State.

## JURISDICTION AND VENUE

4.     In addition, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs, and is between citizens of different States.

5.     The Court has personal jurisdiction over MFGPC since it has consented to *in personam* jurisdiction pursuant to Section 22(m) of the License Agreement, which provides that: "any legal action, suit or proceeding arising out of or in any way in connection with this Agreement may be instituted or brought in the United States District Court for the District of

Utah. [MFGPC] and MFF hereby irrevocably consent and submit to, for themselves and in respect of their property, generally and unconditionally, the jurisdiction of such Court, and to all proceedings in such Court." In addition, the Court has *in personam* jurisdiction over MFGPC pursuant to Utah's Nonresident Jurisdiction Act, Utah Code § 78B-3-201 *et seq.* because MFGPC transacts business within this state. Among other things, by contracting with a corporation headquartered in Utah, MFGPC engaged in minimum contacts involving the State of Utah to make the exercise of jurisdiction foreseeable and fair in this Court.

6. Venue is proper in this District pursuant to Section 22(m) of the License Agreement, which – as noted above – provides that the parties may bring any action before this Court and consent to the Court's jurisdiction. Additionally, venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred in this District and/or 28 U.S.C. § 1391(b)(3) because the Court has personal jurisdiction over the Defendants.

**FACTUAL ALLEGATIONS**

A. **The License Agreement**

7. Mrs. Fields was founded in 1977 and is one of the most recognizable cookie brands in the world. MFF owns the rights to the "Mrs. Fields" trademark and licenses those rights to allow other parties to manufacture, sell, and distribute products using the "Mrs. Fields" trademark.

8. On April 30, 2003, MFF entered into the License Agreement with LHF, Inc. an affiliate of MFGPC. On June 30, 2003, LHF, Inc. assigned all rights under the License Agreement to MFGPC, and MFGPC agreed to be bound by and perform in accordance with the License Agreement. The License Agreement granted MFGPC granting a license to manufacture,

market, and/or sell high quality, pre-packaged, popcorn products (the "Royalty Bearing Products") under the "Mrs. Fields" mark through retail channels worldwide.

9. Under the License Agreement, MFGPC was required – among other things – to:

   a. Remit to MFF Running Royalties constituting 5% of Net Sales of Royalty Bearing Products, within 30 days of the end of such quarter (License Agreement § 5(b));

   b. Pay interest on any unpaid Running Royalties owed but not paid by MFGPC to MFF (License Agreement § 5(d));

   c. Provide to MFF, by the end of the month following each quarter, "a written statement prepared, signed, and certified to be true and correct by MFGPC's chief financial officer or its designee, setting forth the amount of Royalty Bearing Products sold, including sufficient information and detail to confirm the calculations." (License Agreement § 8(a));

   d. Provide MFF with a written annual statement setting forth the amount of Royalty Bearing Products sold and the calculations, including sufficient information and detail to confirm the calculations, used to determine such amounts, which calculations shall be signed and certified as true and correct by an independent certified public accounting firm acceptable to MFF (License Agreement § 8(b));

   e. Provide MFF at the end of each month a written report containing all consumer complaints regarding the Royalty Bearing Products. (License Agreement, § 9(f)));

   f. Obtain and keep in force product liability insurance providing adequate insurance for MFF in no less than $10 million combined single limit on bodily injuries and/or property damage. MFGPC specifically acknowledged this requirement to be a material term. (License Agreement § 14).

10. The License Agreement required MFGPC to pay MFF a guaranteed royalty of approximately, $100,000 per year (with only $50,000 due in the first year) over the course of the five year term of the license (the "Guaranteed Royalty"). (License Agreement §§ 5(a) and 6). MFGPC claims that the License Agreement only required the payment of the Guaranteed

Royalty during the first five-year term. Nevertheless, they were unable to meet even that requirement.

11.     The term of the License Agreement was five years. However, "[s]o long as [MFGPC] is not in material default and subject to Section 7, has met and/or paid Running Royalties based on its Guaranteed Royalty as described in paragraph 6(a) hereof, this Agreement would then automatically renew for successive five year terms."

12.     The License Agreement could be terminated, as opposed to not-renewed, if, among other things:

> a. MFGPC defaulted in the payment of any Running Royalties, the license would be terminated upon notice by MFF effective thirty days after receipt of such notice.
>
> b. MFGPC failed to pay its Guaranteed Royalty, upon receipt of such notice by MFGPC
>
> c. MFGPC failed to perform in accordance with any material term or condition of the License Agreement and such default continued unremedied for thirty days after MFGPC's receipt of written notice of default.

(License Agreement §16).

13.     The License Agreement provided for reasonable costs and expenses, including legal fees, if MFF was required to enforce the License Agreement. (License Agreement §22(k)).

14.     The License Agreement provided that, except to the extent governed by the Lanham Act or other federal law, the License Agreement and the relationship between MFF and MFGPC would be governed by the laws of the state of Utah. (License Agreement §22(m)).

### B.     Defaults Under the License Agreement and MFF's Termination

15.     Although MFGPC claimed the License Agreement renewed automatically in 2008 and 2013, there was a complete failure to meet the conditions necessary to do so. Among other things, there was a complete failure to meet the License Agreement's minimum objectives of $100,000 a year in royalties, or $2,000,000 in sales.

16.     Even during the period that MFGPC claimed that they had renewed, performance was even worse. For example, MFGPC remitted under $10,000 in royalties during calendar year 2012, $0.00 in calendar year 2013 and $0.00 in calendar year 2014.

17.     MFGPC's last royalty payment to MFF occurred on or about October 25, 2012, allegedly covering the third quarter of 2012, in the amount of just $517.

18.     Between the third quarter of 2012 and December 2014, MFGPC failed to remit any royalty payment. MFGPC failed to submit the quarterly report justifying the calculations for the third quarter payment, and failed to provide any other report for any subsequent quarter. MFGPC also failed to provide the required annual reports, certified by an independent accounting firm. Finally, MFGPC failed to provide the monthly reports detailing customer complaints. There is no evidence that MFGPC has met the requirement to maintain $10 million in product liability insurance for MFF's benefit, which was specifically designated to be a material term of the License Agreement.

19.     Out of an abundance of caution, by letter dated December 22, 2014, MFF notified MFGPC that it considered the license agreement to have not renewed because of MFGPC's failures to remain in compliance, and even if it could have been said to renew, because of MFGPC's failure to pay royalties for over two years.

20. After receiving the Notice of Termination, by letter dated January 19, 2015, MFGPC disputed MFF's proper termination of the License Agreement and indicated its intention to hold MFF responsible for MFGPC's damages arising from MFF's alleged wrongful termination.

## COUNT I

### Declaratory Judgment
### (Against MFGPC)

21. MFF restates and incorporates each of the foregoing paragraphs as if fully set forth herein.

22. The License Agreement is properly terminated because it did not renew for an additional five (5) year term because MFGPC was not in material compliance with its terms and had not paid its Running Royalties or Guaranteed Royalty, among other outstanding defaults.

23. Alternatively, even if the License Agreement could be said to have renewed, MFF properly terminated the License Agreement because MFGPC failed to pay required royalties to MFF, among other outstanding defaults.

24. As a result, MFF is entitled to a declaratory judgment that the License Agreement has been properly terminated and is no longer in effect, plus contractual attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against the Defendant as follows:

25. For a declaration that the License Agreement has been properly terminated and is no longer in effect;

26. For an award of attorneys' fees and costs;

27. For such other and further relief as to this Court seems just and equitable.

DATED this 10<u>th</u> day of February, 2015.

                      KIRTON McCONKIE

                      /s/ Rod N. Andreason
                      Rod N. Andreason
                      *Attorneys for Mrs. Fields Franchising, LLC*

<u>Plaintiff's Address</u>:

8001 Arista Place, Suite 600
Broomfield, Colorado 80021