Peter W. Guyon (USB#1285)
Law Offices of Peter W. Guyon, P.C.
614 Newhouse Bldg., 10 Exchange Place
Salt Lake City, UT 84111
Tel: (801) 322-5555
Fax: (801) 322-5558
Email: peter@guyonlaw.com

James A. Dumas (CSB 76824) *Admission Pro Hac Vice Pending*
DUMAS & ASSOCIATES
3435 Wilshire Boulevard, Suite 990
Los Angeles, CA 90010
Tel.: (213) 368-5000
Fax: (213) 368-5009
Email: jdumas@dumas-law.com; ckim@dumas-law.com
*Attorneys for MFGPC, Inc., Defendant*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

| | |
|---|---|
| MRS. FIELDS FRANCHISING, LLC, a Delaware limited liability company,<br><br>   Plaintiff<br>v.<br>MFGPC, INC., a California corporation,<br><br>   Defendants. | |
| MFGPC, INC., a California corporation<br><br>   Cross-Complainant,<br>vs.<br><br>MRS. FIELDS FAMOUS BRANDS, LLC, a Delaware limited liability company, dba FAMOUS BRANDS, INTERNATIONAL; MRS. FIELDS FRANCHISING, LLC, a Delaware limited liability company; MRS. FIELDS CONFECTIONS, LLC, a Delaware limited liability company,<br><br>   Cross-Defendants. | **FIRST AMENDED COUNTERCLAIM AND CROSS-CLAIMS**<br><br>Civil No.   2:15-cv-00094-DB<br><br>Judge   Dee Benson |

1

Defendant and Cross-complainant MFGPC, INC., a California corporation, by its counsel, as and for its First Amended Counterclaim and Cross-Claims herein, complains and alleges as follows:

## I. PARTIES

1. Cross-complainant MFGPC, Inc. ("MFGPC") is a corporation organized under and existing pursuant to the laws of the State of California, with its principal place of business in Mission Viejo, California.

2. Cross-defendant Mrs. Fields Famous Brands, LLC dba Famous Brands, International ("FBI") is a limited liability company organized under and existing pursuant to the laws of the State of Delaware.

3. Cross-defendant Mrs. Fields Franchising LLC ("MFF") is a limited liability company organized under and existing pursuant to the laws of the State of Delaware.

4. Cross-defendant Mrs. Fields Confections, LLC ("MFC") is a limited liability company organized under and existing pursuant to the laws of the State of Delaware.

## II. JURISDICTION AND VENUE

5. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332 in that the amount in controversy exceeds $75,000 and is between citizens of different States.

6. This Court has personal jurisdiction over MFF because it is the plaintiff herein.

7. This Court has personal jurisdiction over MFF, FBI, and MFC, because at all times relevant hereto, they have been doing business in the State of Utah and, specifically with respect to the subject matter of the within action, have transacted business in Utah. Each of them has engaged in minimum contacts with the State of Utah.

8. Venue is proper in this District because in a certain License Agreement which is the subject of the Complaint herein, as well as of this Cross-complaint, the parties agreed that

any action thereunder would be brought in the within District. In addition, the agreement itself was entered into in the State of Utah.

### III. FACTS COMMON TO ALL CLAIMS

9. On April 30, 2003, Mrs. Fields Original Cookies, Inc. ("MFOC"), a Delaware corporation, and LHF, Inc., a California corporation, entered into a "Trademark Licensing Agreement" ("Licensing Agreement"), with respect to "prepackaged popcorn products" to be sold bearing the "Mrs. Fields" trademark and trade name through "all areas of general retail distribution."

10. The License Agreement provided for an initial five year term during which royalties were to be paid. The royalties to be paid in this first five year period would be the greater of "Running Royalties" based on the volume of actual sales of licensed merchandise or a "Guaranteed Royalty" of $100,000 for the first year, $50,000 for the second year, and $100,000 each for the third, fourth, and fifth years, for a total of $450,000. If the royalties had been paid and LHF was not in "material default," the agreement would "automatically renew for successive five year terms." After the initial term, LHF would only be liable for "Running Royalties."

11. The License Agreement further provided that if LHF "fails to perform in accordance with any material term or condition of [the] Agreement", and the default remains unremedied after LHF has been given thirty days written notice of the breach, then MFOC can terminate the agreement. A true and correct copy of the executed License Agreement is attached hereto as **Exhibit A** and incorporated herein by reference.

12. On June 30, 2003, with the written permission of MFOC, LHF assigned its rights and obligations under the License Agreement to MFGPC. Cross-complainant is informed and

3

believes, and on that basis alleges, that at some point thereafter MFOC assigned its rights and obligations under the Agreement to its wholly owned subsidiary or subsidiaries, FBI and/or to MFF. At all times hereto relevant, representatives of MFGPC have been led to believe that the license was owned by FBI and all of its dealings have been with officers and representatives of FBI. All of its royalty payments have been made to FBI. At the present time, MFF claims to be the licensor under the License Agreement and is the plaintiff in the within action. Prior to receiving an alleged termination letter on December 22, 2014, as hereinafter described, cross-complainant had never heard of MFF, let alone had it been told that it was the licensor under the License Agreement. Cross-complainant is informed and believes, and on that basis alleges, that at all times relevant FBI and MFF (which shall sometimes hereinafter be referred to as "FBI/MFF"), as well as MFC, have had identical ownership and management, have a complete identity of interest, and are the agent each of the other. For purposes of the License Agreement and cross-complainants general dealings with them, they should be regarded as one entity.

13.     MFGPC paid the royalties required of it during the first term of the License Agreement, consisting of $450,000 in Guaranteed Royalties and the agreement automatically renewed in April, 2008. Thereafter, MFGPC paid Running Royalties and the agreement automatically renewed again in April, 2013. At no time prior to December 22, 2014, did any representatives of MFOC, FBI, or MFF ever take the position, either in a written notice of default or otherwise, that MFGPC was in default on royalty payments or was otherwise in material breach of the License Agreement. From the execution of the License Agreement in 2003 until December 22, 2014, all interaction between representatives of MFGPC, on the one hand, and MFOC, FBI, and MFF, on the other, was consistent with the assumption that MFGPC was a licensee in good standing and in 2013 FBI required MFGPC to make a $50,000 investment in

4

package design changes for its products which was necessarily premised on the license being in full force and effect.

14. Throughout the period in question and until at least September, 2014, FBI sold MFGPC packaged popcorn in Mrs. Fields Gift packages that were shipped to Mrs. Fields customers. Paragraph 3(b) of the License Agreement provides that the licensor could buy "royalty bearing products" from the licensee and pay for such product "less an offset for the amount of the Running Royalty otherwise due" from the licensee. As of the present time, and after giving FBI/MFF a credit for Running Royalties that would be due them under the License Agreement, FBI/MFF owes MFGPC the sum of $26,660.43 on account for MFGPC packaged popcorn they have sold their customers.

15. During the period covered by the License Agreement, MFOC, FBI, MFF, and MFC have suffered financial reversals and turmoil in their management which has impaired the MFGPC's relationship with them and its ability to exploit the license. Mrs. Fields went through a Chapter 11 bankruptcy in 2008, and almost filed again in 2011. It has had a recent change of ownership, three different Chief Executive Officers since the beginning of 2013, and substantial turnover among the marketing and licensing relations personnel. Relationships developed and agreements made with the successive FBI officers have been jettisoned as the officers are replaced. To this instability has been added a refusal by the most recently installed FBI management team to take reasonable actions to enable MFGPC to market its products, including, but not limited to, a refusal to allow MFGPC to sell its popcorn through the Mrs. Fields website.

16. On December 22, 2014, via overnight mail, Avery Samet, Esq., counsel for MMF, wrote a letter to Christopher Lindley, the President of MFGPC, claiming that, due to an alleged

failure by MFGPC to pay royalties, the License Agreement had not in fact renewed in 2013 and that, to the extent that MFGPC was taking the position that it had renewed, it was "hereby terminated." Notwithstanding the clear language in the agreement to the effect that payment of Guaranteed Royalties was only required for the initial five year term, the letter states that the agreement did not renew for a third term and was in default because of a failure to pay Guaranteed Royalties after 2008. No other alleged default by MFGPC under the License Agreement was identified. The letter demands Guaranteed Royalty payments going back to 2008, plus default interest. A true and correct copy of Mr. Samet's letter of December 22, 2014 (the "Samet Letter"), is attached hereto as **Exhibit B** and incorporated herein by reference.

17.     On December 24, 2014, two days after the Samet Letter was sent to Mr. Lindley, FBI issued a press release which announced the acquisition by its wholly-owned subsidiary, MFC, of Maxfield's Candy Company. The press release stated that, with the acquisition, it was obtaining the "Nutty Guys" premium brand of "popcorn products." Plaintiff is informed and believes, and on that basis alleges, that FBI and/or MFC are marketing Mrs. Fields branded popcorn and/or "Nutty Guys" branded popcorn through Mrs. Fields retail distribution channels. Either way, the marketing is in direct competition with the marketing of Mrs. Fields branded popcorn by MFGPC.

18.     As a consequence of the Samet Letter, MFGPC has been effectively prevented from marketing and shipping its prepackaged popcorn product.

19.     On January 19, 2015, Carolyn A. Dye, counsel for MFGPC, responded to the Samet Letter. She argued that no royalties were due, that FBI/MFF owed MFGPC $26,660.43, and that MFGPC was being severely damaged by the purported termination of the license and the intention of FBI/MFC to go into direct competition with it.

20. On February 10, 2015, MFF filed the complaint in the within action seeking declaratory relief to resolve an alleged dispute regarding the terms of the License Agreement. The Complaint alleged additional breaches of the License Agreement which had not appeared in the Samet Letter or in any other prior communication, written or oral, by MFOC, FBI, or MFF to MFGPC.

## IV. FIRST CLAIM FOR RELIEF (Against FBI and MFF For Breach of Written Agreement)

21. Cross-complainant refers to the allegations contained in paragraphs 1 through 20 hereof and incorporates said allegations herein as if fully set forth hereat.

22. Cross-complainant has performed all the duties on its part to be performed under the License Agreement and is excused from further performance thereunder by reason of the multiple breaches of the agreement by FBI/MFF, as hereinafter set forth.

23. Cross-defendants FBI/MFF have breached the License Agreement in the following respects:

(a) By taking the position in the Samet Letter that the agreement had not been renewed.

(b) By, in the alternative, purporting to terminate the agreement by means of the Samet Letter on account of non-existent alleged breaches of the agreement.

(c) By purporting to terminate the agreement effective immediately, rather than effective within thirty days, as provided for in the agreement.

(d) By purporting to immediately terminate the agreement with respect to alleged breaches, other than non-payment of Guaranteed and Running Royalties, without giving cross-complainant thirty days to cure.

    (e)    By failing to pay MFGPC the $26,660.43 it is owed on account.

24.    As a consequence of said breaches of the License Agreement, MFGPC has been prevented from marketing its popcorn, has suffered lost profits, and has been threatened with the loss of the entire investment it made pursuant to the License Agreement.

25.    MFGPC has suffered damages as a consequence of cross-defendants' ongoing breaches in an amount according to proof but in the minimum sum of $500,000. It is further entitled to an order requiring specific performance of provisions of the License Agreement which are currently being breached by cross-defendants, and a preliminary injunction against cross-defendants taking any action to interfere with cross-complainant's right to distribute licensed merchandise pursuant to the agreement, including but not limited to, by the marketing by cross-defendants of competing products. It is lastly entitled to an award of attorneys' fees and costs for the sums it is spending defending the Complaint herein and prosecuting the within Cross-complaint.

## V. SECOND CLAIM FOR RELIEF (For Account Stated Against FBI)

26.    Cross-complainant refers to the allegations contained in paragraphs 1 through 20 hereof and incorporates said allegations herein as if fully set forth hereat.

27.    In the period from March through September of 2014 MFGPC prepared, packaged, and shipped merchandise to FBI for sale by FBI to its customers. FBI has sold said merchandise to its customers.

28.    Subsequent to shipment, MFGPC provided invoices to FBI for said merchandise showing amounts owed on account of the shipments of $70,222.60. After giving FBI a credit for running royalties due FBI/MFF under the License Agreement, as provided for in the agreement,

FBI owes MFGPC the sum of $26,660.43. Authorized representatives of FBI communicated to MFGPC in writing that the invoices were approved.

29. FBI has failed and refused to pay MFGPC the amount invoiced or any amount. As a consequence thereof, FBI owes MFGPC the sum of $26,660.43 on said account. MFGPC is entitled to an award of damages and a prejudgment writ of attachment in said amount. Lastly, MFGPC is entitled to an award of attorneys' fees.

## VII. THIRD CLAIM FOR RELIEF (Against FBI and MFF for Breach of the Implied Covenant of Good Faith and Fair Dealing)

30. Cross-complainant refers to the allegations contained in paragraphs 1 through 20 hereof and incorporates said allegations herein as if fully set forth hereat.

31. In entering into the License Agreement the parties thereto assumed a duty of good faith in its performance and enforcement. They were required to deal with each other honestly, to observe reasonable commercial standards of fair dealing, and, specifically, to not undertake any action that would have the necessary consequence of impairing the ability of the other party to perform under and receive the benefit of the contract. In particular, the License Agreement imposed upon FBI and MFF a duty to provide MFGPC reasonable access to the retail distribution channels that exist for Mrs. Fields branded products and, with regard to those channels, to refrain from marketing products competitive with products that MFGPC was authorized to market and has been marketing pursuant to the agreement.

32. In breach of this implied covenant of good faith and fair dealing, FBI and MFF have not provided MFGPC reasonable access to the retail distribution channels that exist for Mrs. Fields branded products and have used those channels to market products competitive with

products that MFGPC was authorized to market and has been marketing pursuant to the agreement.

33.     As a consequence of said breaches, MFGPC is suffering an injury which is ongoing but which is in the minimum sum of $500,000. MFGPC is further entitled to an award of attorneys' fees.

## PRAYER FOR RELIEF

Wherefor, cross-complainant prays for relief as follows:

1.      On the First Claim for Relief for an award of damages in an amount according to proof but in the minimum sum of $500,000, attorneys' fees, an order requiring specific performance of provisions of the License Agreement which are currently being breached by cross-defendants, and a preliminary injunction against cross-defendants taking any action to interfere with cross-complainant's right to distribute licensed merchandise pursuant to the agreement, including but not limited to by selling competing products.

2.      On the Second Claim for Relief for an award of damages in an amount according to proof, but in the minimum sum of $26,660.43, attorneys' fees, and for a prejudgment writ of attachment in said amount.

3.      On the Third Claim for Relief for an award of damages in an amount according to proof, but in the minimum sum of $500,000, plus attorneys' fees.

4.      For such other and further relief as the Court deems just and proper.

Dated this 13th day of May, 2015.

                                                LAW OFFICES OF DUMAS & ASSOCIATES

                                                /s/ James A. Dumas, Jr.
                                                James A. Dumas
                                                *Attorney for MFGPC, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing *COUTERCLAIM AND CROSS-CLAIMS* was electronically filed on the date first above written thereby served upon the parties identified in the Court's CM/ECT system report on the 14th day of May, 2015.

/s/ James A. Dumas, Jr.
James A. Dumas
*Attorney for MFGPC, LLC*