Rod N. Andreason (Bar No. 8853)
KIRTON | MCCONKIE
400 Kirton McConkie Building
50 East South Temple, Suite 400
P.O. Box 45120
Salt Lake City, UT 84145-0120
Telephone: (801) 328-3600
Fax: (801) 321-4893
Email: *randreason@kmclaw.com*

Bijan Amini, NY #1989052, *Admission Pro Hac Vice Pending*
Avery Samet, NY #4245965, *Admission Pro Hac Vice Pending*
STORCH AMINI & MUNVES PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
Telephone: (212) 490-4100
Fax: (212) 490-4208
Email: *bamini@samlegal.com*
          *asamet@samlegal.com*

*Attorneys for Mrs. Fields Franchising, LLC, Mrs. Fields Famous Brands, LLC and Mrs. Fields Confections, LLC*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| MRS. FIELDS FRANCHISING, LLC,<br>a Delaware limited liability company,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>MFGPC, INC.,<br>a California corporation,<br><br>　　　　　　　Defendant. | **MOTION TO DISMISS THE CROSS AND COUNTER-CLAIMS OF MFGPC, INC. AND MEMORANDUM IN SUPPORT**<br><br>Case No. 2:15-cv-00094-DB<br><br>Judge Dee Benson |

## **TABLE OF CONTENTS**

**PAGE**

INTRODUCTION .................................................................................................................1

STATEMENT OF FACTS ....................................................................................................3

LEGAL STANDARD ...........................................................................................................7

ARGUMENT.........................................................................................................................7

    I.    MFGPC HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT
          (FIRST CLAIM AGAINST MFF AND FBI)..............................................................8

    II.   MFGPC FAILS TO STATE A CLAIM FOR ACCOUNT STATED
          (SECOND CLAIM AGAINST FBI)............................................................................11

    III.  MFGPC FAILS TO STATE A CLAIM FOR BREACH OF THE
          COVENANT OF GOOD FAITH AND FAIR DEALING
          (THIRD CLAIM AGAINST FBI AND MFF)...........................................................  12

    IV.  MFGPC ASSERTS NO CLAIM FOR RELIEF AGAINT MFC, THEREFORE MFC
          MUST BE DISMISSED AS A DEFENDANT
.............................................................................................................................14

CONCLUSION....................................................................................................................14

4823-0506-9861.v1

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..............................................................................................................7, 11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................................................................................11

*Burnett v. Mortg. Elec. Registration Systems, Inc.,*
    706 F.3d 1231 (10th Cir. 2013) ..................................................................................................11

*Hall v. Bellmon,*
    935 F.2d 1106 (10th Cir. 1991) ....................................................................................................7

*Hurd v. Central Utah Water Co.,*
    99 Utah 355, 106 P.2d 775 (1940) ..............................................................................................11

*MBNA Am. Bank, N.A. v. Goodman,*
    2006 UT App 276, 140 P.3d 589 (2006) ......................................................................................8

*Oakwood Village LLC v. Albertsons, Inc.,*
    104 P.3d 1226 (Utah 2004) ..........................................................................................................13

*Rio Algom Corp. v. Jimco Ltd.,*
    618 P.2d 497 (Utah 1980) ............................................................................................................13

*Slater v. A.G. Edwards & Sons, Inc.,*
    719 F.3d 1190 (10th Cir. 2013) ....................................................................................................7

*Thomas v. Kaven,*
    765 F.3d 1183 (10th Cir. 2014) ....................................................................................................7

*Young Living Essential Oils, LC v. Marin,*
    266 P.3d 814 (Utah 2011)............................................................................................................14

4823-0506-9861.v1

Plaintiff and counterclaim defendant Mrs. Fields Franchising, LLC ("MFF"), cross-defendant Mrs. Fields Famous Brands, LLC ("FBI"), and cross-defendant Mrs. Fields Confections, LLC ("MFC," and together with MFF and FBI, collectively "Counterdefendants"), by and through their counsel of record, Rod N. Andreason and Kirton McConkie, hereby respectfully file this Motion (the "Motion") to Dismiss the First Amended Cross- and Counter-claims[1] of Defendant and Counterclaimant MFGPC, Inc. ("MFGPC") [Dkt. No. 33] together with the previously submitted declaration of Rod N. Andreason in support of Counterdefendants motion to dismiss the initial Countercomplaint dated March 27, 2015 (the "Andreason Dec.").[2]

## INTRODUCTION

On February 10, 2015, MFF commenced this action seeking a declaratory judgment that its license agreement (the "License Agreement") with MFGPC had been terminated.[3]  The License Agreement was entered into in 2003, had a five-year term (subject to renewal), and granted MFGPC an exclusive license to sell gourmet popcorn under the "Mrs. Fields" trademark. After the initial term, MFGPC continued selling popcorn under the "Mrs. Fields" brand, but stopped performing its own obligations under the License Agreement: it ceased paying royalties, did not provide reports of sales, did not provide reports of customer complaints, and did not maintain the contractually required insurance.  In December 2014, MFF informed MFGPC that

---

[1] MFGPC has labeled its counterpleading as a counterclaim and crossclaims.  In the pleading itself, MFGPC designates all the claims as crossclaims.  Nevertheless, it is clear that the counterpleading against the plaintiff MFF is a counterclaim and the claims asserted against FBI and MFC are third-party claims.

[2] Counterdefendants submitted the Andreason Dec. in connection with their initial motion to dismiss MFGPC's Countercomplaint.  Pursuant to stipulated Order dated May 12, 2015, MFGPC was granted permission to replead its counterclaims.  By the Motion, Counterdefendants renew their motion to dismiss the Countercomplaint.

[3] The Complaint is annexed as Exhibit 1 to the Andreason Declaration;  MFGPC's Answer is annexed thereto as Exhibit 2 and its Countercomplaint is annexed thereto as Exhibit 3.  The License Agreement is annexed to the Countercomplaint as Exhibit A (Andreason Dec. Exhibit 3).

4823-0506-9861.v1

the License Agreement was terminated and subsequently commenced this action for a declaration that such termination was effective.

MFGPC answered the Complaint with a "general denial" of all allegations as to its breaches[4] and then subsequently moved for a temporary restraining order and preliminary injunction enjoining termination of the License Agreement, which motion was supported by its CEO's declaration **actually admitting** the facts constituting the alleged breaches.[5]    In the interim, between denying and then admitting the allegations, MFGPC filed its initial Counterclaim alleging: various claimed breaches of the License Agreement (First Claim); an "account stated" based on unidentified "accounts" (Second Claim); claims that MFF's affiliates intentionally (Third Claim) or negligently (Fourth Claim) interfered with its "prospective economic advantage" with unidentified "third persons"; and a claimed breach of the "implied covenant of good faith and fair dealing" by reason of having terminated the License Agreement. On March 27, 2015, Mrs. Fields moved to dismiss the Counterclaim for failing to state a claim and at a hearing on March 30, 2015, the Court denied MFPGC's motion for a temporary restraining order and preliminary injunction.

On May 14, 2015, MFPGC filed its Amended Counterclaim stripping out the Third and Fourth claims for relief, but otherwise leaving the remaining claims substantially the same. While removing some of the least defensible causes of action, MFGPC still seeks a pre-judgment

---

[4] *See* Andreason Decl. Exhibit 2 at ¶ 7.

[5] *See* Declaration of Christopher Lindley dated February 26, 2015 (filed as Docket No. 14) at ¶ 27 and Exhibit D thereto.  In that paragraph, Mr. Lindley admits that MFGPC failed to provide the contractually required audited reports, admits that it failed to provide customer complaints, and admits that it did not maintain the required insurance.  He claims that he did provide "reports of royalties from the third quarter of 2012 and thereafter"—but that claimed report (which he annexes as Exhibit D) was not provided until after MFF terminated the License Agreement in 2015 (whereas such reports were required quarterly) and that "report" itself reflects that no royalties were paid at least from 2012.

writ of attachment, a preliminary injunction, specific performance of the License Agreement, and at least $500,000 in damages. Curiously, the Amended Counterclaim drops one of the central the allegations that formed the basis of its motion for a temporary restraining order – the allegation that Counterdefendants breached the License Agreement "[b]y marketing popcorn in competition with MFGPC." Initial Counterclaim ¶23(d). While MFGPC has dropped the counterclaims against MFC – the entity allegedly marketing popcorn in competition with MFGPC – the Amended Counterclaim still names MFC as a party without asserting any claims for relief against MFC. This Motion seeks to dismiss the Amended Counterclaim because – even after amendment – none of MFPGC 's claims states a cause of action as a matter of law.

## STATEMENT OF FACTS

1.    The following facts are taken from the Amended Counterclaim (and the License Agreement annexed thereto) and, except for the terms of the License Agreement, are largely disputed by the Counterdefendants, but the well-pleaded factual allegations are necessarily assumed to be true solely for purposes of this motion. A more complete and accurate recitation of the background of this case can be found in MFF's Memorandum in Opposition to MFGPC's Motion for a Temporary Restraining Order and Preliminary Injunction. (Dkt. No. 18).

2.    On April 30, 2003, MFF, through a predecessor entity, Mrs. Fields Original Cookies, Inc., entered into a Trademark License Agreement with LHF, Inc. (the "License Agreement") with respect to "prepackaged popcorn products" bearing the "Mrs. Fields" trademark. Amended Counterclaim at ¶¶ 9, 12.[6] The License Agreement is annexed as

---

[6] The Amended Counterclaim alleges that the License Agreement was assigned to "FBI and/or to MFF" (Counterclaim ¶ 12) and, for that reason, and based on a bare allegation on information and belief that "FBI and

Exhibit A to the Counterclaim (Andreason Dec. Exhibit 3.)  Effective June 2003, Mr. Lindley elected to assign, to MFGPC, the rights of LHF, Inc. under the License Agreement. *Id.* at ¶ 12.

3.     Under the License Agreement, MFGPC was obligated to pay the greater of Guaranteed Royalties or Running Royalties during the initial term. *Id.* at ¶ 10.  (Based on the 5% royalty rate, the Guaranteed Royalties assumed $2,000,000 of net sales per year.  License Agreement §§ 5(b), 6(a).)  After that initial five-year term, MFGPC would be obligated to pay Running Royalties.  Amended Counterclaim ¶ 10.  These Running Royalties were 5% of Net Sales and were to be paid to MFF by "the last day of the month following the end of each calendar quarter covered by the Agreement." License Agreement at § 5(b).

4.     The License Agreement would automatically renew for consecutive five-year terms unless either party terminated the Agreement within 20 days of the end of the term; however, there would be no automatic renewal if MFGPC was not then current on its royalty payments.  License Agreement at § 16(a).  In addition, pursuant to the License Agreement, "[i]f [MFGPC] defaults in the payment of any Running Royalties then this Agreement and the license granted hereunder may be terminated upon notice by [MFF] effective thirty (30) days after receipt of such notice, without prejudice to any and all other rights and remedies [MFF] may have hereunder or by law provided, and all rights of [MFGPC] hereunder shall cease." *Id.* at § 16(b)(i).

5.     In contrast to payment defaults, which resulted in termination without further notice or opportunity to cure, the License Agreement provided that other defaults could be

---

MFF . . . have had identical ownership and management," MFGPC's contract claims are alleged against both FBI and MFF.

curable: "If [MFGPC] fails to perform in accordance with any material term or condition of this Agreement (other than as described in paragraph 16(b)(i) and (ii) above [concerning defaults in payments of Running Royalties and Guaranteed Royalties, respectively]) and such default continues unremedied for thirty (30) days after the date on which [MFGPC] receives written notice of default, unless such remedy cannot be accomplished in such time period and [MFGPC] has commenced diligent efforts within such time period and continues such effort until the remedy is complete, then this Agreement may be terminated upon notice by [MFF], effective upon receipt of such notice, without prejudice to any and all other rights and remedies [MFF] may have hereunder or by law provided." *Id.* at § 16(b)(iii).

6.     The Amended Counterclaim alleges that " '[t]he License Agreement further provided that if LHF fails to perform in accordance with any material term or condition of [the] Agreement', and the default remains unremedied after LHF has been given thirty days written notice of the breach, then MFOC can terminate the agreement." Amended Counterclaim at ¶

7.     The Amended Counterclaim appears to quote Section 16(b)(iii) of the License Agreement, but no citation is provided and, in fact, Section 16(b)(iii) explicitly does not apply to Running Royalties or Guaranteed Royalties as they are covered by Sections 16(b)(i) and (ii), which are specifically excluded from that provision.

8.     Throughout the term of the License Agreement and until at least September 2014, "FBI sold MFGPC packaged popcorn" and FBI and/or MFF currently owe MFGPC $26,660.43 for such popcorn after crediting the unpaid Running Royalties owing from MFGPC to MFF. *Id.* at ¶ 14.  At some point "[i]n the period from March through September 2014," MFGPC alleges that it provided invoices to FBI showing amounts owed of $70,222.60. *Id.* at ¶¶ 28-29. Nevertheless, MFGPC does not allege that FBI owes $70,222.60.  Instead, MFGPC alleges that

5

it is "giving FBI a credit for unpaid [R]unning [R]oyalties due FBI/ MFF under the License Agreement, as provided for in the agreement" and that after application of such credits, "FBI owes MFGPC the sum of $26,660.43 *Id.* at ¶28. The License Agreement provided that MFF could purchase Royalty Bearing Products from MFGPC at the lowest net price received by MFGPC for any customer, "less an offset for the amount of the running royalty otherwise due from [MFGPC] to [MFF] which will instead be credited against the purchase price charged by [MFGPC] to [MFF]." License Agreement at § 3(b).

9.      During this same time period, the Counterdefendants experienced financial turmoil, successfully completed a Chapter 11 bankruptcy case in 2008, and replaced various personnel. *Id.* at ¶ 15.

10.      In 2013, FBI required MFGPC to make a $50,000 investment in package design changes. *Id.* at ¶ 13.

11.      At some point, FBI has refused to take unspecified actions to enable MFGPC to market its products, including "a refusal to allow MFGPC to sell its popcorn through the Mrs. Fields website." *Id.* at ¶ 15.

12.      Prior to December 22, 2014, MFF, the Counterdefendants never took the position that MFGPC was in default on royalty payments or otherwise in material breach of the License Agreement. *Id.* at ¶ 13.

13.       On December 22, 2014, counsel for MFF sent a letter to MFGPC's president, Christopher Lindley, "claiming that, due to an alleged failure by MFGPC to pay royalties, the License Agreement had not in fact renewed in 2013 and that, to the extent that MFGPC was taking the position that it had renewed, it was 'hereby terminated.'" (the "Termination Letter"). *Id.* at ¶ 16. The Termination Letter was annexed as Exhibit B to the original Countercomplaint.

4823-0506-9861.v1

14.    On December 24, 2014, FBI issued a press release stating that its wholly-owned subsidiary MFC had obtained the "Nutty Guys" brand of popcorn products. *Id.* at ¶ 17.  MFGPC alleges "on information and belief" that FBI and/or MFC are marketing Mrs. Fields-branded popcorn and/or "Nutty Guys"-branded popcorn though Mrs. Fields retail distribution channels in direct competition with MFGPC. *Id.*

15.    The License Agreement provided MFGPC with the exclusive right and license to use the "Mrs. Fields" mark to manufacture and market high quality, pre-packaged, popcorn products. License Agreement at § 2.

16.    MFGPC has been effectively prevented from marketing and shipping its prepackaged popcorn products due to the Termination Letter. Counterclaim at ¶ 18.

## LEGAL STANDARD

For purposes of the Motion, the well-plead material allegations of the non-movant's pleadings are taken as true. *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014). The Amended Counterclaim, however, must "plead facts sufficient to state a 'claim to relief that is plausible on its face'" to survive. *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Thomas*, 765 F.3d at 1190-91 (quoting *Iqbal*, 556 U.S. at 678). In addition, the court may consider documents annexed to or incorporated into the Counterclaim. *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

## ARGUMENT

MFGPC now alleges three causes of action:

- First Claim for Relief against MFF and FBI for breach of the License Agreement;

7

- Second Claim for Relief against FBI for account stated; and

- Third Claim for Relief against MFF and FBI for breach of the implied covenant of good faith and fair dealing.

As described below, none of these causes of action state a claim against the Counterdefendants as a matter of law.

## I.   MFGPC HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT (FIRST CLAIM AGAINST MFF AND FBI)

The Amended Countercomplaint alleges that "FBI" have breached the License Agreement by: (a) "taking the position" that the License Agreement had not renewed; (b) wrongfully terminating the License Agreement; (c) wrongfully terminating without providing a 30-day grace period; (d) not giving MFGPC 30 days to cure certain defaults; and (e) failing to pay MFGPC the $26,660.43 for MFGPC's popcorn.  Amended Countercomplaint at ¶ 23.  We address each prong *seriatim*.

"Taking the position" that the License Agreement had not been renewed or, in the alternative, wrongfully terminating it. (Amended Countercomplaint ¶ 23(a) and (b)).  It is, of course, axiomatic that damages are an element of a claim for breach of contract under Utah law and, therefore, that no such claim can be stated unless facts are alleged that plausibly plead damages.  *E.g., MBNA Am. Bank, N.A. v. Goodman*, 2006 UT App 276, ¶ 6, 140 P.3d 589, 591 (2006).  Here, MFGPC alleges nothing more than, "[a]s a consequence of the [Termination Letter dated December 22, 2014], MFGPC has been effectively prevented from marketing and shipping its prepackaged popcorn product."  Amended Countercomplaint ¶ 18.  *See also id*. ¶ 24.  That is a wholly conclusory statement that is completely devoid of facts as to *how* sending a letter to MFGPC itself, taking the position in that letter that the contract had been terminated, in any way "prevented [MFGPC] from marketing and shipping its prepackaged popcorn product."

8

In fact, the License Agreement explicitly *permits* MFGPC to continue marketing and selling its "prepackaged popcorn product" after termination:  "For a period of six (6) months following the termination or expiration of this Agreement, [MFGPC] shall have the right to sell any Royalty Bearing Products in [MFGPC] inventory which have been packaged in packages bearing the  Licensed Names and Marks . . . ."  (License Agreement ¶ 17.)  MFGPC has not alleged, and simply cannot allege, that the mere sending of a letter "taking the position" that the agreement was terminated "prevented" it from doing anything or that it caused it any damage at all.

"Purporting to terminate the agreement effective immediately, rather than effective within thirty days as provided for in the agreement." (Amended Counterclaim ¶ 23(c)).  The foregoing discussion concerning the failure to plead damages is equally applicable here.  In addition, the Termination Letter took the position that the License Agreement had not automatically renewed by reason of MFGPC's failure to pay royalties or was otherwise terminated for failure to timely pay royalties (Amended Counterclaim ¶ 16).  As noted above, there is no "thirty-day grace period" at all with respect to payment defaults:  the non-renewal is self-effectuating if royalty payments were not then current, and any termination for failure to pay royalties became effective in 30 days without any further notice or opportunity to cure. (License Agreement §§ 16(a); 16(b)(i) and (ii).)  *Compare* License Agreement § 16(b)(iii) which provides an opportunity to cure only non-payment defaults (which provision, as noted above in the Fact Section ¶ 6, was clearly mischaracterized in MFGPC's Counterclaim).

"[P]urporting to immediately terminate the agreement with respect to alleged breaches, other than non-payment of Guaranteed and Running Royalties, without giving [MFGPC] thirty

9

days to cure." (Amended Countercomplaint ¶ 23(d)).  The Amended Countercomplaint contains no facts regarding a purported termination of the License Agreement for such breaches.[7]

"[F]ailing to pay MFGPC the $26,660.43 it is owed on account." (Countercomplaint ¶ 23(e)).  If MFF purchases product from MFGPC, the License Agreement gives MFGPC the right to offset any royalties then owed by "credit[ing it] against the purchase price charged by [MFGPC] to [MFF]."  (License Agreement § 3(b).)  MFGPC, however, alleges that "from March through September of 2014" FBI purchased product (Amended  Countercomplaint ¶ 27), that MFGPC sent invoices totaling $70,222.60 to FBI (*id*. ¶28) and that post-termination, on January 19, 2015, MFGPC's lawyer subsequently applied a credit for Running Royalties due but not paid reducing the amount owed to $26,660 (*id*. ¶19, 28).  MFPGC does not allege that it gave the credit at the time of the alleged purchases, as required by the License Agreement  (License Agreement §3(b)), nor that MFGPC even informed MFF or FBI of the royalties owed  because, as noted above, it had not provided any royalty statements at all for at least the last two years. Now it seeks to collect such sums not from just FBI, but also from MFF, not as breach of contract for those particular, unspecified invoices, but as a breach of the License Agreement itself.[8]  However, the only connection to the License Agreement is the very provision which MFGPC violated by failing to report its Running Royalties and failing to reduce its purchase

---

[7] MFGPC may be referring to the numerous material, non-payment defaults which it has *admitted* in connection with its motion for a temporary restraining notice and preliminary injunction.  *See supra* note 4.  All of those defaults would have been grounds for termination under the License Agreement.

[8] MFGPC essentially alleges that FBI and MFF are alter-egos of each other and "should be regarded as one entity." (Amended Countercomplaint ¶12).  Suffice say, MFGPC hardly pleads alter ego liability.

price by such admittedly owed royalty amounts.  *See* MFF's Opposition Brief to MFGPC's Motion for a Temporary Restraining Order (the "TRO Opp.") [Dkt. No. 18], pages 11-13.[9]

\* \* \*

MFGPC has not alleged a breach of contract claim upon which relief may be granted and, therefore, its First Claim should be dismissed as a matter of law.

## II.   MFGPC FAILS TO STATE A CLAIM FOR ACCOUNT STATED (SECOND CLAIM AGAINST FBI)

Under Utah law, in order to state a claim for account stated, a party must establish: (1) that transactions occurred between the party and a counterparty which gave rise to an obligation to pay; (2) the party made statements or declarations specifying the amount due on the account; and (3) the counterparty either expressly or impliedly agreed that the amount stated was correct. *See Hurd v. Central Utah Water Co.*, 99 Utah 355, 106 P.2d 775, 777-78 (1940).  Here, MFGPC has wholly failed to allege with any specificity what invoices were sent, when they were sent, or what the amounts stated as owing were.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted); *Burnett v. Mortg. Elec. Registration Systems, Inc.*, 706 F.3d 1231, 1241 (10th Cir. 2013) (upholding dismissal of claims because "[the plaintiff] has not stated sufficient factual allegations here to 'nudge [her] claims . . . across the line from conceivable to plausible.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Amended Countercomplaint states the aggregate amount of invoices sent between

---

[9] In addition, the opposition brief detailed the Lindley Declaration's inconsistency regarding the amount of sales which MFGPC alleges to have made, and, thus the amount of royalties actually owed to MFF.  TRO Opp.  page. 13.  Thus, without waiving other defenses, should MFGPC prevail on its claim that MFF is responsible for invoices submitted to FBI, then MFF will need an accounting of what is owed to it to determine how much remains owed to MFGPC.

11

March to September 2014 totaled $70,222.60 without any further details.  *Id.* at ¶ 28.  The Amended Counterclaim alleges merely that counsel for MFGPC, when responding to the Termination Letter in January 2015, argued that FBI owed $26,660 (Amended Counterclaim ¶ 19), thus "after giving FBI a credit for running royalties due FBI/MFF … FBI owes MFGPC the sum of $26,660.43" (*id.* ¶ 28).  Nothing in the Amended Counterclaim alleges that MFGPC ever sent FBI an invoice showing $26,660 as due, and there are certainly no facts in the Amended Counterclaim which entitle MFGPC to the plausible inference that FBI agreed with the amount due.[10]  Instead, as argued in the TRO Opp., the $26,660 amount seems to be a retroactive "credit" based upon what MFGPC now claims to be the royalties that it owes MFF but did not pay.

In any event, allegations that do not identify invoices, the balances reflected on such invoices, or the dates of such invoices, are not sufficient to plausibly allege that  FBI expressly or impliedly agreed that the balance was correct and owing as is necessary to plead a claim for an account stated.

### III.   MFGPC FAILS TO STATE A CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING (THIRD CLAIM AGAINST FBI AND MFF)

MFGPC claims that "the License Agreement imposed a duty upon FBI and MFF to provide MFGPC reasonable access to the retail distribution channels that exist for Mrs. Fields branded products and, with regard to those channels, to refrain from marketing products competitive with [MFGPC products]…"  The License Agreement imposes no obligation to

---

[10] Nothing in the Amended Counterclaim alleges that MFGPC provided any royalty statements to MFF which would show royalties earned and due, plus MFGPC's CEO admitted in a sworn declaration that MFGPC did not provide such royalty statements—*see supra* p. 2 n.5).  Therefore, it is difficult to understand how such amounts could be considered an "account stated."

4823-0506-9861.v1

"facilitate the marketing by MFGPC"— in fact, it provides just the opposite:  "[MFF] will have the option, but not the obligation, to participate in the cross promotion in its company owned stores of the Royalty Bearing Products."  (License Agreement § 10(b).)  Thus, the License Agreement expressly negates any such obligations and, for that reason alone, MFGPC cannot impose such obligations through the implied covenant.

The License Agreement contains no prohibition on "marketing products competitive with products that MFGPC was authorized to market."  (Amended Counterclaim ¶31).   It prohibits only "Mrs. Fields" branded popcorn, not any other brand of popcorn.  (License Agreement § 2.)  Further, it even permits the sale of "Mrs. Fields" branded popcorn when purchased from MFGPC (*id*. §§ 2,3(b).) The Amended Counterclaim alleges (without any factual predicate) nothing more than that "[MFGPC] is informed and believes, and on that basis alleges, that FBI and/or MFC are marketing Mrs. Fields branded popcorn and/or "Nutty Guys" branded popcorn through Mrs. Fields retail distribution channels."  (Amended Counterclaim ¶ 17.)   That allegation alleges nothing inconsistent with what is permitted by the License Agreement.

Under Utah law, "[a] court will not . . . make a better contract for the parties than they have made for themselves.  An express agreement or covenant relating to a specific contract right excludes the possibility of an implied covenant of a different or contradictory nature."  *Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497, 505 (Utah 1980) (citations omitted).  Further, the Utah courts "will not use this covenant to achieve an outcome in harmony with the court's sense of justice but inconsistent with the express terms of the applicable contract."  *Oakwood Village LLC v. Albertsons, Inc.*, 104 P.3d 1226, 1240 (Utah 2004) (citation omitted).

13

Here, MFGPC is attempting to write a provision into the License Agreement which the parties did not agree on and which is not tethered to any express contractual provision.  It is not seeking to imply rights that are necessary for it to enjoy the benefits of the contract; it is seeking to impose additional affirmative obligations that would give it even greater benefits than it bargained for.  That is simply not permissible.  *See, e.g., Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 817-18 (Utah 2011).

### IV.   MFGPC ASSERTS NO CLAIM FOR RELIEF AGAINST MFC; THEREFORE, MFC MUST BE DISMISSED AS A DEFENDANT

Although listed as a defendant in the caption, the Amended Countercomplaint asserts no cause of action against MFC.

### CONCLUSION

For the reasons set forth above, the Counterdefendants respectfully request that this Court dismiss the Countercomplaint in its entirety, with prejudice, and that it grant such other and further relief as is just and proper.

DATED this 22nd day of June, 2015

Respectfully submitted,

KIRTON MCCONKIE

By:  /s/ Rod N. Andreason
        Rod N. Andreason
        Attorneys for Plaintiff Mrs. Fields
        Franchising, LLC

Of Counsel:
Bijan Amini, Esq. (*Admission Pro Hac Vice Pending*)
Avery Samet, Esq. (*Admission Pro Hac Vice Pending*)

14

4823-0506-9861.v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of June 2015, I caused a true and correct copy of the foregoing **Motion to Dismiss the Cross and Counter-claims of MFGPC, INC. and Memorandum in Support** to be delivered by the method indicated below to the following:

|  |  |  |
|---|---|---|
| [   ] | U.S. MAIL | James A. Dumas |
| [   ] | HAND DELIVERY | jdumas@dumas-law.com |
| [   ] | FAX TRANSMISSION | DUMAS & KIM, APC |
| [   ] | FEDERAL EXPRESS | 3435 Wilshire Blvd., Suite 990 |
| [ X ] | CM/ECF | Los Angeles, California 90010 |

/s/ Lisa Sledge

4823-0506-9861.v1