James A. Dumas (CSB 76824) *Admitted Pro Hac Vice*
DUMAS & KIM, APC
3435 Wilshire Boulevard, Suite 990
Los Angeles, CA 90010
Tel.: (213) 368-5000
Fax: (213) 368-5009
Email: jdumas@dumas-law.com; ckim@dumas-law.com
*Attorneys for MFGPC, Inc., Defendant & Cross-Complainant*

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| MRS. FIELDS FRANCHISING, LLC, a Delaware limited liability company, <br><br> Plaintiff <br> v. <br> MFGPC, INC., a California corporation, <br><br> Defendants. | |
| MFGPC, INC., a California corporation <br><br> Cross-Complainant, <br> vs. <br><br> MRS. FIELDS FAMOUS BRANDS, LLC, a Delaware limited liability company, <br> dba FAMOUS BRANDS, INTERNATIONAL; <br> MRS. FIELDS FRANCHISING, LLC, a Delaware limited liability company; MRS. FIELDS CONFECTIONS, LLC, a Delaware limited liability company, <br><br> Cross-Defendants. | **OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM AND CROSS-CLAIMS** <br><br> Civil No.   2:15-cv-00094-DB <br><br> Judge   Dee Benson |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARD ..................................................................................................... 1

III. MFGPC HAS ALLEGED SUFFICIENT FACTS TO STATE A CLAIM FOR BREACH OF CONTRACT .................................................................................................. 2

IV. MFGPC HAS ALLEGED SUFFICIENT FACTS TO STATE A CLAIM FOR AN ACCOUNT STATED ..................................................................................................... 8

V. CROSS-CLAIMANT WILL AGREE TO STRIKE CERTAIN ALLEGATIONS OF THE THIRD CLAIM FOR RELIEF ............................................................................................ 9

VI. CONCLUSION ............................................................................................................... 9

Certificate of Service .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007) ...................................1

*Ashcroft v. Iqbal,* 556 US 662, 678, 129 S.Ct. 1937, 1950 (2009) ….............................................2

*Bell Atlantic v. Twombly,* supra, 550 U.S. at 555, 127 S.Ct. at 1965 .............................................2

*Ashcroft v. Iqbal,* supra, 556 US at 678, 129 S.Ct. at 949 …......................................................2

*Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) …........................................2

*Shroyer v. New Cingular Wireless Services, Inc.,* 622 F3d 1035, 1041 (9th Cir. 2010) ................2

*Hurd v. Central Utah Water Co.,* 99 Utah 355, 106 P.2d 775, 777-778 (1940)…....................…..8

COMES NOW Defendant and Cross-complainant MFGPC, INC., a California corporation, by its counsel, and as and for its Opposition to Cross-Defendants' Motion to Dismiss the First Amended Counterclaim and Cross-Claims herein, represents as follows:

## I. INTRODUCTION

With one exception, the within motion to dismiss consists of an attempt by cross-defendants to argue their alternative version of the relevant facts, as opposed to making any serious attempt to establish that the richly detailed allegations of the First Amended Counter-Claim and Cross-claims ("ACC") somehow fail to put them on "fair notice of what … [MFGPC's]…claim[s] [are] and the grounds upon which [they] rest."

In response to one argument with respect to the third Claim for Relief for breach of the covenant of good faith and fair dealing, MFGPC is willing to consent to a striking of certain language from that Claim for Relief. Otherwise, the motion should be denied.

## II. LEGAL STANDARD

A motion pursuant to FRCP Rule 12(b)(6) challenges the "legal sufficiency of a complaint" in relation to the pleading requirements set forth in Rule to 8(a). Rule 8(a) requires a plaintiff to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief" and a "demand for the relief sought." Rule 8(d)(1) states: "Each allegation must be simple, concise, and direct." A complaint is sufficient if it gives "fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007).

A claimant needs to provide "facts" rather than legal conclusions. "..[W]hile legal conclusions can provide the framework of a complaint; they must be supported by factual allegations." *Ashcroft v. Iqbal,* 556 US 662, 678, 129 S.Ct. 1937, 1950 (2009). However, the Federals Rules do not require that a claimant "set out *in detail* the facts upon which he bases his claim." *Bell Atlantic v. Twombly,* supra, 550 U.S. at 555, 127 S.Ct. at 1965. A claimant must merely provide "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal,* supra, 556 US at 678, 129 S.Ct. at 949.

In determining the sufficiency of a pleading, allegations of material fact are taken as true and construed in the light most favorable to the pleader. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007).

A Rule (b)(6) motion must establish that a plaintiff has failed to allege sufficient facts "to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Services, Inc.,* 622 F3d 1035, 1041 (9th Cir. 2010).

### III. MFGPC HAS ALLEGED SUFFICIENT FACTS TO STATE A CLAIM FOR BREACH OF CONTRACT

Paragraphs 9 through 20 of the ACC consist of detailed factual allegations that support the claim for Breach of Contract. After incorporating these paragraphs, the First Claim for Relief adds additional factual allegations and identifies five breaches of the Agreement by defendants that arise out of the alleged facts. A defendant, ever anxious to seize an opportunity to argue its own version of the relevant events, challenges the sufficiency of each of them.

**"Taking the position"** that the License Agreement had not been renewed or, in the **alternative, wrongfully terminating it.** Cross-defendants apparently concede that MFGPC has

2

adequately alleged a breach by reason of the December 22 termination letter. They nonetheless argue that MFGPC has failed to sufficiently allege damages because the allegation that "[a]s a consequence of the [Termination Letter] MFGPC has been effectively prevented from marketing and shipping its prepackaged popcorn product" is somehow "wholly conclusory" and "devoid of facts as to *how* sending" the letter "prevented [MFGPC} from marketing and shipping its prepackaged popcorn product." The motion goes on to argue that "MFGPC has not alleged, and simply cannot allege, that the mere sending of a letter 'taking the position' that the agreement was terminated 'prevented' [MFGPC] from doing anything or that it caused it any damage at all."

The contention that MFGPC has not alleged that, as a consequence of the letter, it was 'prevented' from marketing and shipping, and that it was damaged, flies in the face of the plain language of the ACC. Cross-defendants' demands for still more facts regarding the issue is merely a pretext for arguing its own version of the relevant facts, not a complaint that it has not been given "fair notice of what [MFGPC's]…claim is and the grounds upon which it rests."

Missing from cross-defendants' argument is any mention of the additional language regarding damages in the First Claim for Relief which alleges that MFGPC, in addition to being prevented from marketing its popcorn, "has suffered lost profits, and has been threatened with the loss of the entire investment it made pursuant to the License Agreement."

Every complaint, however detailed, could provide still more detail in support of its claims. In support of its motion for preliminary injunction, MFGPC in fact provided page after page of detail as to how and why the December 22 letter made it impossible for it to continue with its marketing and production of product. However, as discussed above, Rule 8(a) mandates pleadings whose allegations are "simple, concise, and direct." The purpose is to put cross-

3

defendants on notice of the claims against them, not to argue their merits. The degree of factual support that one would introduce in support of a motion for preliminary injunction is not required.

In any event, how difficult is it to image that a letter purporting to terminate a license would render it impossible for a licensee to market and ship the licensed product, would result in lost profits, and would threaten the loss of the investment it had made pursuant to the License Agreement? Although cross-defendants' argument conveniently forgets it, the December 22 letter didn't just "take the position" that the license had already been terminated, it purported, in the alternative, to terminate the license effective immediately. Are cross-defendants implying that, in the face of such a letter, MFGPC needs to explain why it did not just continue to market, produce, and ship the licensed product in defiance of the termination, something that cross-defendants would obviously have treated as actionable?

Cross-Defendants do point out that the Agreement allows a terminated licensee, for the six months after termination, to sell product that was already in inventory and packaged (a provision, as MFGPC showed in its preliminary injunction motion, cross-defendants had previously denied applied to MFGPC). However, the existence of a right for a limited period of time to dispose of the remaining packaged inventory is in no way inconsistent with the claim that the termination "effectively prevented" MFGPC from marketing and shipping the licensed product.

**Purporting to terminate the agreement effective immediately, rather than effective within thirty days as provided for in the agreement.** Cross-Defendants state that "the foregoing discussion concerning the failure to plead damages is equally applicable here." This refers to the issue discussed in the above paragraphs which has been adequately discussed there.

Cross-Defendants add an additional argument where they allege that this part of MFGPC's claim is inconsistent with sub-paragraphs 16(b)(i) and 16(b)(2) of the Agreement concerning, respectively, Running and Guaranteed, Royalties. Paragraph 16(b)(1), regarding Running Royalties, requires thirty days notice of termination but does not give the licensee a thirty day cure period. Paragraph 16(b)(2), concerning Guaranteed Royalties, does not require thirty days notice. However, MFGPC is *not* alleging that there was a cure period in either case, simply that, in the case of Running Royalties, there was a thirty day *notice* period which was not observed. That MFGPC is not alleging a thirty day cure period for Running and Guaranteed Royalties is obvious from the language of paragraph 23(d) of the ACC, which deals with cross-defendants' failure to provide a thirty day cure period as to other alleged breaches of the Agreement, in accordance with paragraph 16(b)(3) of the Agreement.

And, of course, cross-defendant's Complaint herein, filed on February 10, 2014, list several additional alleged breaches by MFGPC which allegedly support the license termination. Each of these alleged breaches would indisputably have been subject to the thirty day cure period provided for in paragraph 16(b)(3) of the Agreement, if Mrs. Field's attorneys had bothered to mention them in the December 22 letter.

**Purporting to Immediately terminate the agreement with respect to alleged breaches other than non-payment of Guaranteed and Running Royalties, without giving [MFGPC] thirty days to cure.** Mrs. Fields alleges that ACC "contains no facts regarding a purported terminated of the License Agreement for such breaches." Again, what Mrs. Fields is really doing here is not contending that the allegations in paragraph 23(d) of the ACC do not provide it with "fair notice of what [MFGPC's]…claim is and the grounds upon which it rests." The allegations clearly identify a specific breach of the Agreement by Mrs. Fields. Rather it

seems to be arguing that, notwithstanding the allegations of paragraph 18 of its February 10 complaint to the contrary, such breaches were not the basis for the termination. Such an argument is at best appropriate for the time of trial, not in a motion to dismiss where allegations of material fact in a challenged pleading are taken as true and construed in the light most favorable to the pleader.

**Failing to pay MFGPC the $26,660.43 it is owed on the account.** Paragraph 12 of the ACC alleges that:

"At all times hereto relevant, representatives of MFGPC have been led to believe that the license was owned by FBI and all of its dealings have been with officers and representatives of FBI. All of its royalty payments have been made to FBI. At the present time, MFF claims to be the licensor under the License Agreement and is the plaintiff in the within action. Prior to receiving an alleged termination letter on December 22, 2014, as hereinafter described, cross-complainant had never heard of MFF, let alone had it been told that it was the licensor under the License Agreement. Cross-complainant is informed and believes, and on that basis alleges, that at all times relevant FBI and MFF (which shall sometimes hereinafter be referred to as "FBI/MFF"), as well as MFC, have had identical ownership and management, have a complete identity of interest, and are the agent each of the other. For purposes of the License Agreement and cross-complainants general dealings with them, they should be regarded as one entity."

Paragraph 14 of the ACC alleges:

"Paragraph 3(b) of the License Agreement provides that the licensor could buy "royalty bearing products" from the licensee and pay for such product 'less an offset for the amount of the Running Royalty otherwise due' from the licensee. As of the present time, and after

6

giving FBI/MFF a credit for Running Royalties that would be due them under the License Agreement, FBI/MFF owes MFGPC the sum of $26,660.43 on account for MFGPC packaged popcorn they have sold their customers." Paragraph 23(d) of the ACC then alleges that, in failing to pay MFGPC the $26,660.43 that it is owed, the Agreement has been breached.

    Notwithstanding these clear and consistent allegations, cross-defendants challenge them. Again, it is effectively just seizing the opportunity to argue its alternative version of the relevant facts, as opposed to attempting to show why MFGPC has not alleged facts that support a plausible claim. First, we are told the allegations are deficient because "MFGPC does not allege that it gave the credit at the time of the alleged purchases, as required by the License Agreement." However, paragraph 3(b) does not impose any requirement on MFGPC to give "the credit at the time of the alleged purchases." It simply imposes a duty on cross-defendants to pay for the merchandise shipped "less an offset for the amount of the Running Royalty otherwise due." The ACC alleges that cross-defendants have been invoiced for the shipments and given notice of the credits to which it is entitled, leaving a balance due of $26,660.43 for which it has not paid. For purposes of giving Mrs. Fields "fair notice of what [MFGPC's]…claim is and the grounds upon which it rests," this clearly enough.

    Secondly, cross-defendants seem to be arguing that MFF cannot be liable for product shipped to FBI. Aside from the fact that this render paragraph 3(b) of the Agreement a nullity, this is just cross-defendants' version of the facts. For purposes of this motion to dismiss, the above-quoted allegations of paragraph 12 of the ACC regarding the relationship between MFF, FBI, and MFGPC have to be "taken as true and construed in the light most favorable to MFGPC."

7

## IV. MFGPC HAS ALLEGED SUFFICIENT FACTS TO STATE A CLAIM FOR AN ACCOUNT STATED

Once again, cross-defendants are just using this part of the motion to argue their own version of the relevant facts. A cause of action for Account Stated under Utah law requires a showing that (1) transactions occurred between the party and the counter party which gave rise to an obligation to pay; (2) the party made statements or declarations specifying the amount due on the account; and (3) the counterparty either expressly or impliedly agreed that the amount stated was correct. *Hurd v. Central Utah Water Co.,* 99 Utah 355, 106 P.2d 775, 777-778 (1940). Cross-defendants cannot contest that facts in support of each of these elements are alleged in the Second Cause of Action.

Cross-defendants do not even seem to be challenging the first element above nor is it a position to challenge the second one. Paragraph 28 of the ACC alleges that MFGPC invoiced cross-defendants for the shipments and, after providing appropriate credits, $26,660.43 was owed. Lastly, the third element is clearly satisfied by the allegation of paragraph 28 that: "Authorized representatives of FBI communicated to MFGPC in writing that the invoices were approved."

Cross-defendants argue that MFGPC could have provided more detail regarding the transactions by providing the dates of each invoice, etc. However, this clearly is not necessary give cross-defendants ""fair notice of what [MFGPC's]…claim is and the grounds upon which it rests." Their issues regarding the truth of MFGPC's allegations can be addressed at trial.

## V. CROSS-CLAIMANT WILL AGREE TO STRIKE CERTAIN ALLEGATIONS OF THE THIRD CLAIM FOR RELIEF

Cross-defendants argue that the allegations of the Third Claim for Relief for breach of the Covenant of Good Faith and Fair Dealing are inconsistent with paragraph 10(b) of the Agreement, which they argue impliedly absolves cross-defendants of any duty to provide MFGPC access to the distribution channels for cross-defendants' products. In the interests of finally moving beyond the pleading stage of this case, Cross-claimant is willing to delete the following language of the Third Claim for Relief: (1) the words "provide MFGPC reasonable access to the retail distribution channels that exist for Mrs. Fields branded products" in paragraph 31 of the ACC; and (2) the words "not provided MFGPC reasonable access to the retail distribution channels that exist for Mrs. Fields branded products" in paragraph 32 of the ACC.

It is submitted that, with these changes, there is no conceivable argument that there is any inconsistency between the allegations of the Third Claim for Relief and the terms of the Agreement. Cross-defendants themselves concede that the Agreement requires cross-defendants "to refrain from marketing products competitive with products that MFGPC was authorized to market and has been marketing pursuant to the agreement" as alleged in paragraph 31 of the ACC. Whether cross-defendants have in fact been doing so is an issue of fact to be determined at trial.

## VI. CONCLUSION

Subject to the striking of the language from the Third Claim for Relief, as discussed above, the Motion to Dismiss should be denied.

Dated this 23rd day of July, 2015.        DUMAS & KIM, APC

/s/ James A. Dumas, Jr.
James A. Dumas
*Attorneys for MFGPC, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS AND CROSS-CLAIMS OF MFGPC was electronically filed on the date first above written thereby served upon the parties identified in the Court's CM/ECT system report on the 23rd day of July, 2015.

/s/ James A. Dumas, Jr.
James A. Dumas
*Attorney for MFGPC, LLC*

| | |
|---|---|
| Avery Samet | asamet@samlegal.com, jhoyte@samlegal.com |
| Bijan Amini | bamini@samlegal.com, jhoyte@samlegal.com |
| James A. Dumas | jdumas@dumas-law.com |
| Peter W. Guyon | pguyon@yahoo.com |
| Rod N. Andreason | randreason@kmclaw.com, lsledge@kmclaw.com |