James A. Dumas (CSB 76824) *Admitted Pro Hac Vice*
DUMAS & KIM, APC
3435 Wilshire Boulevard, Suite 990
Los Angeles, CA 90010
Tel.: (213) 368-5000
Fax: (213) 368-5009
Email: jdumas@dumas-law.com; ckim@dumas-law.com
*Attorneys for MFGPC, Inc., Defendant & Cross-Complainant*

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| MRS. FIELDS FRANCHISING, LLC, a Delaware limited liability company,<br><br>    Plaintiff<br>v.<br>MFGPC, INC., a California corporation,<br><br>    Defendants. | **SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM AND CROSS-CLAIMS**<br><br>Civil No.   2:15-cv-00094-DB<br><br>Judge   Dee Benson |
| MFGPC, INC., a California corporation<br><br>    Cross-Complainant,<br>vs.<br><br>MRS. FIELDS FAMOUS BRANDS, LLC, a Delaware limited liability company,<br>dba FAMOUS BRANDS, INTERNATIONAL;<br>MRS. FIELDS FRANCHISING, LLC, a Delaware limited liability company; MRS. FIELDS CONFECTIONS, LLC, a Delaware limited liability company,<br><br>    Cross-Defendants. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

I. INTRODUCTION ................................................................................................1

II. EQUITABLE ESTOPPEL ONLY APPLIES TO A POTENTIAL DEFENSE THAT MRS. FIELDS COULD ASSERT TO THE FAC ............................................................4

III. MFGPC HAS PLED SUFFICIENT FACTS TO ESTABLISH THE APPLICATION OF EQUITABLE ESTOPPEL.............................................................................. 7

IV. THE ISSUE IS NOT WHETHER THERE WAS A "RETROACTIVE SET-OFF............................................................................................................8

V. IF THE COURT IS NOT PERSUADED THAT MFGPC'S RESPONSES TO THE ARGUMENTS IN MRS. FIELDS' REPLY ARE NOT ADEQUATELY PLED IN THE FAC, MFGPC SHOULD BE GIVEN LEAVE TO FILE A SECOND AMENDED CROSS-CLAIM..............................................................................................10

VI. CONCLUSION...................................................................................................10

Certificate of Service ....................................................................................................... 11

# TABLE OF AUTHORITIES

## Cases

*Self Directed Placement Corp. v Control Data Corp.,* 908 F.2d 462, 466 (9th Cir. 1990)............4

*Alvarez v. Hill,* 518 F3d 1152, 1157 (9th Cir. 2008)………………..........................................4

*Homoki v. Conversion Services, Inc.*, 717 F.3d 388, 402 (5th Cir. 2013)......................................4

*Hatmaker v. Memorial Med. Ctr.* , 619 F.3d 741, 743 (7th Cir. 2010)….......................................4

*Stevenson v. City of Seat Pleasant, Md.,* 743 F.3d 411, 418 (4th Cir. 2014)………….................4

*State of Utah, etc. v. Irizarry,* 893 P d.2d 1107, 1 110 (1995)……………..…………………..7

*Celebrity Club, Inc. v. Utah Liquor Control Comm'n,* 602 P.2d 689, 694 (Utah 1979)………….7

## Statutes

Rule 8 (a) and *Slater v. A.G. Edwards & Sons, Inc.,* 719 F.3d 1190, 1196 (10th Cir. 013)………4

COMES NOW Defendant and Cross-complainant MFGPC, INC., a California corporation, by its counsel, and as and for its Supplemental Opposition to Cross-Defendants' Motion to Dismiss the First Amended Counterclaim ("FAC") herein, represents as follows:

## I. INTRODUCTION

Supplemental briefing regarding the pending Motion to Dismiss is required because, in their Reply to MFGPC, Inc.'s Opposition to the motion, Cross-Defendants (hereinafter "Mrs. Fields") are raising an argument that did not appear in either its original Motion to Dismiss or in the one that is now before the Court. The thrust of both motions was that the claim for Breach of Contract is deficient due to an alleged failure to adequately plead damages. The pending motion deals solely with this subject. Yet in the Reply, Mrs. Fields effectively abandons this argument and devotes itself to a discussion of the issues of waiver and what it calls a "retroactive set-off."

This constant morphing of the argument from Mrs. Fields is nothing new. The only termination that has ever been communicated, set forth in the December 23, 2014 Avery Samet letter, terminated the license effective immediately (and indeed took the position that the license had failed to even renew in 2012) based on an alleged failure to pay so-called "Guaranteed Royalties." MFGPC responded by pointing out that it was not being provided the requisite thirty days notice, that no Guaranteed Royalties had been due for many years, and that the only royalties that it was required to pay, so-called "Running Royalties," were not only current, but had been overpaid. Mrs. Fields responded by filing the Complaint for Declaratory Relief where it alleged a failure to pay both Guaranteed and Running Royalties and brought in a series of additional alleged breaches of the License Agreement that allegedly were the basis for the termination, including a failure to provide timely royalty reports with respect of Running

1

Royalties. In the motion papers in support of MFGPC's motion for a preliminary injunction, MFGPC pointed out that none of these alleged additional grounds could have been the basis for the termination since they all required thirty days notice and an opportunity to cure. After MFGPC filed its initial version of the Cross-Claim, Mrs. Fields filed a Motion to Dismiss where it argued, *inter alia,* that there was a failure to adequately plead damages and that the Samet termination letter was effective because there was no opportunity to cure if there had been a failure to pay" royalties," without specifying which of the two types of royalties it was talking about. After the FAC was filed, the new Motion to Dismiss only focused on the claim that there had been a failure to adequately plead damages. After MFGPC's Opposition to the pending Motion to Dismiss pointed out that damages had clearly been pled, Mrs. Fields filed a Reply that for the first time argued that the Samet letter was effective because of an alleged failure by MFGPC to pay Running Royalties (although the letter had said nothing about Running Royalties). In the face of the allegations of the FAC that at the time of the Samet Letter Running Royalties were overpaid, Mrs. Fields argues that there was no overpayment of Running Royalties at the time of the Samet Letter because the alleged overpayment was a somehow impermissible species of payment that it calls "Retroactive Set-Off." It also impliedly argues that, even if Running Royalties were indeed overpaid by the time of the Samet letter, it was entitled to terminate MFGPC due to a failure to make timely Running Royalty payments in the past. It is this last argument that prompted it to discuss the issue of waiver, an issue that figured in the briefing regarding the motion for preliminary injunction which is nowhere mentioned either expressly or impliedly in the FAC.

    In oral argument at the hearing on October 29, MFGPC sought to bring clarity to this free-wheeling, scatter-shot process by seeking to isolate the ultimate issue that emerges from

Mrs. Fields papers. Counsel for MFGPC asserted that Mrs. Field's legal defense to the claim in the Breach of Contract claim in the FAC that Mrs. Fields was unlawfully terminated in the Samet Letter comes down to just one argument: that in December, 2014, at a time when, according to the allegations of the FAC MFGPC had overpaid Running Royalties, Mrs. Fields *would* have been entitled to terminate MFGPC on the grounds that it had failed to pay timely royalties in part of 2012, 2013, and the early part of 2014. To paraphrase Mrs. Fields argument about "retroactive set-off," the issue is whether Mrs. Fields would have been entitled to engage in "retroactive termination." Counsel argued that, as a matter of law, every other alleged ground for termination at that point, including the failure to provide timely royalty reports, could not have been a basis for a termination since all these grounds, according to the terms of the contract, required thirty days notice and an opportunity to cure, which FAC alleges were not given.

At the October 29 hearing MFGPC's counsel further pointed out that the new argument of Mrs. Fields about waiver was directed at this issue alone. The "waiver" argument arises out of factual allegations that were made in connection with the motion for preliminary injunction, but which do not even appear in the FAC, to the effect that Mrs. Fields orally agreed to a deferral of Running Royalty payments. Mrs. Fields argued in its Reply that an "oral waiver" will not work due to provisions of the contract that provide that any waiver must be in writing. At the October 29 hearing counsel for MFGPC pointed out that there was nothing in the FAC about waiver and the issue was not waiver but equitable estoppel, an affirmative defense that MFGPC had put in its Answer to Mrs. Fields Declaratory Relief Complaint and the factual support for which clearly appears in the allegations of the FAC. The Court then asked for further briefing on equitable estoppel and whether it had been adequately pled in the FAC.

(There was little discussion of the "retroactive set-off "argument at the October 29 hearing but since it was raised for the first time in the Reply to the Opposition to the Motion to Dismiss, it will be briefly discussed below.)

## II. EQUITABLE ESTOPPEL ONLY APPLIES TO A POTENTIAL DEFENSE THAT MRS. FIELDS COULD ASSERT TO THE FAC

MFGPC was required to provide a "*short* and *plain* statement of the claim showing that the pleader is entitled to relief" (emphasis supplied) and in the course of doing so to "plead facts sufficient to state a claim that is plausible on its face….." Rule 8(a) and *Slater v. A.G. Edwards & Sons, Inc.,* 719 F.3d 1190, 1196 (10th Cir. 2013). It is not always necessary to specify the precise nature of a claim asserted so long as the facts allege put the defendant on notice thereof. *Self Directed Placement Corp. v Control Data Corp.,* 908 F.2d 462, 466 (9th Cir. 1990). Notice pleading requires plaintiffs to set forth claims for relief, not legal theories. As long as the facts alleged provide "fair notice" of the claim, a complaint "need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss." It is not always necessary to specify the precise nature of a claim asserted so long as the facts allege put the defendant on notice thereof. *Alvarez v. Hill,* 518 F3d 1152, 1157 (9th Cir. 2008); *Homoki v. Conversion Services, Inc.*, 717 F.3d 388, 402 (5th Cir. 2013); *Hatmaker v. Memorial Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Specific phrases or legal labels characterizing the claim are not required, as long as sufficient facts are alleged to put defendant on notice of the claim. *Stevenson v. City of Seat Pleasant, Md.,* 743 F.3d 411, 418 (4th Cir. 2014).

The Breach of Contract Claim for Relief in the FAC identifies three breaches arising out of the unwarranted termination by Mrs. Fields in December 23, 2014 Samet Letter, one breach directed at allegations set forth in the Complaint for Declaratory Relief, and a final claim based on the failure to pay MFGPC $26,660.43 for goods shipped to Mrs. Fields, an effective failure to acknowledge an overpayment of royalties. Every one of these claims is "plausible" based on facts that are pled earlier in the FAC and incorporated into this claim for relief. In particular, earlier in the FAC it is alleged that the Samet letter treated the license as never having been renewed in 2012, or as being terminated effective immediately upon receipt of the letter, due *solely* to an alleged failure to pay Guaranteed Royalties. The FAC alleges, based on the unambiguous language of the License Agreement, that the only Guaranteed Royalties due were payable and paid during the five year term of the agreement which expired in 2007 and that, in any event, immediate termination of the contract was impermissible. Even if there was no opportunity to cure, termination required thirty days notice.

Although Mrs. Fields has yet to even provide an Answer to the Complaint, based on the Motion to Dismiss, it does not appear that the foregoing allegations are even controversial. Mrs. Fields appears to be conceding that that the license renewed in 2012, that no Guaranteed Royalties were due after 2007, and that any termination required thirty days notice. In short, there does not seem to be any dispute about the fact that the Samet letter was defective.

What we're dealing with instead with Mrs. Fields' argument about Running Royalties is effectively a defense or defenses to the conceded defectiveness of the Samet letter. One way of re-stating the argument is that while the Samet letter talks of non-renewal in 2012 and/or immediate termination on account of Guaranteed Royalties, it should be interpreted as impliedly terminating MFGPC on thirty days notice due to a failure to pay Running Royalties. A second

5

related way of stating it is that MFGPC suffered no damages because Mrs. Fields *could* have terminated the Agreement on thirty days notice due to a failure to pay *Running Royalties* (although it never did so). Neither argument is made in so many words because Mrs. Fields apparently thinks it can get away with treating the Samet letter as if it was about Running Royalties. However, this clearly is not what the FAC alleges and what the Samet letter said and for purposes of a Motion to Dismiss, such an argument is clearly inappropriate.

In any event, it is in response to this *defensive* argument, solely appropriate for a later stage in these proceeds, that MFGPC is alleging that in fact it had overpaid Running Royalties as of the time of the Samet termination letter and that any claim that, notwithstanding the overpayment, that it could terminate MFGPC for a failure to pay timely Running Royalties at some earlier point in time is barred by the doctrine of equitable estoppel.

No authority exists for the proposition that in the course of providing a making "a short and plain statement" of its claim that a claimant is required to anticipate fact-dependent defenses of the type described above and refute the defenses with factual allegations, let alone citation to legal doctrine or authority. In fact, as will be discussed in greater detail below, a "plausible" refutation of this line of defensive argument from Mrs. Fields is established by the allegations that already appear in the FAC. And, of course, that MFGPC is relying on equitable estoppel to rebut the claim that the contract could have been terminated for a failure to pay timely Running Royalties was previously pled in the Answer that MFGPC filed to the Declaratory Relief Complaint at the same time it filed its initial Cross-Claim. See Answer, Second Affirmative Defense.

The focus on what Mrs. Fields *could* have done if it had sent a different termination letter, for whatever relevance it has to this case, is at best a factual issue appropriate to a later

stage in this case. It is not appropriate for a motion to dismiss.

### III. MFGPC HAS PLED SUFFICIENT FACTS TO ESTABLISH THE APPLICATION OF EQUITABLE ESTOPPEL

Under Utah law a party can be equitably estopped from asserting a claim when the following elements are present:"(1) an admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act, and; (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act." *State of Utah, etc. v. Irizarry,* 893 P d.2d 1107, 1110 (1995); *Celebrity Club, Inc. v. Utah Liquor Control Comm'n,* 602 P.2d 689, 694 (Utah 1979). "The issue of whether equitable estoppel has been established is a classic mixed question of law and fact." *State of Utah, etc. v. Irizarry, supra,* 893 P d.2d at 1110.

The foregoing elements of equitable estoppel are established by the following allegations of the FAC:

> "At no time prior to December 22, 2014, did any representatives of MFOC, FBI, or MFF ever take the position, either in a written notice of default or otherwise, that MFGPC was in default on royalty payments or was otherwise in material breach of the License Agreement. From the execution of the License Agreement in 2003 until December 22, 2014, all interaction between representatives of MFGPC, on the one hand, and MFOC, FBI, and MFF, on the other, was consistent with the assumption that MFGPC was a licensee in good standing and in 2013 FBI required MFGPC to make a $50,000 investment in package design changes for its products which was necessarily premised on the license being in full force and effect." FAC, paragraph 13.

It goes on to allege in paragraph 14 that, pursuant to the Agreement, it shipped popcorn to Mrs. Fields through at least September, 2014 for which it has not been paid.

These allegations, which at this stage in these proceedings must be assumed to be true, establish that Mrs. Fields acted in a fashion inconsistent with a right to terminate the License Agreement, including by ordering popcorn and demanding that MFGPC invest in re-packaging; that MFGPC acted in reliance on such actions and statements, including by shipping popcorn for which it has not been paid and investing $50,000 in new packaging; and that if Mrs. Fields is now allowed to terminate MFGPC based on alleged untimely payments when such reliance occurred which have since been brought current, it will be injured, in part by reason of having invested in new packaging and having shipped popcorn for which it is not being paid. Whether these circumstances, as well as other statements by Mrs. Fields and other forms of detrimental reliance by MFGPC, ultimately establish equitable estoppel is a "mixed question of fact and law" which needs to be determined by the trier of fact. Note that the statements by Mrs. Fields representatives forgiving timely payments of Running Royalties, discussed in Mrs. Fields Reply, will obviously figure in this factual inquiry.

## IV. THE ISSUE IS NOT WHETHER THERE WAS A "RETROACTIVE SET-OFF"

Mrs. Field's Reply raises a second argument that has not appeared in any of its prior pleadings to the effect that MFGPC allegations that it had overpaid Running Royalties as of the time of the Samet termination letter should be disregarded because the payment was only accomplished by what it calls "Retroactive Set-Off." Without explaining why, this argument treats the "payment" as only having occurred when MFGPC belatedly provided the information

8

from which one could determine the amount of royalties that had accrued. However, as Mrs. Fields itself is at pains to argue, payment and reporting about the obligation to pay are distinct and have different legal consequences under the contract. It is only the failure to actually pay that has no thirty day cure period. It is doubtful that Mrs. Fields would argue that a payment by check only becomes effective when a royalty report is provided that shows that it was sufficient in amount. There is no reason that payment in kind by means of shipments of product for which there has been never been any payment should be treated any differently. These shipments and offsets on account of them were pursuant to paragraph 3(b) of Agreement. The FAC alleges that shipments in excess of $70,000 in merchandise were made between March and September of 2014 and to date, no payment has been received for any of them in spite of Mrs. Fields acknowledgment that payment has been due. Unless and until Mrs. Fields makes a payment on the invoices for these shipments described in the FAC, something that has never occurred, payment was made by reason of the shipments.

These are the allegations of the FAC and they are entirely consistent with the relevant language in the License Agreement. For purposes of this stage in these proceedings there should be no issue about "retroactive set-off." If anything implicates "retroactivity" at the pleading stage of the case, it is Mrs. Fields' claim that it could have terminated MFGPC for a since-cured failure to pay timely royalties in 2012 and 2013.

## V. IF THE COURT IS NOT PERSUADED THAT MFGPC'S RESPONSES TO THE ARGUMENTS IN MRS. FIELDS' REPLY ARE NOT ADEQUATELY PLED IN THE FAC, MFGPC SHOULD BE GIVEN LEAVE TO FILE A SECOND AMENDED CROSS-CLAIM

As has been explained above, MFGPC believes both that there is no reason for equitable estoppel to have been pled in the FAC and that it nonetheless has been adequately pled. However, if the Court concludes that it is necessary that it be pled and that the allegations of the FAC are insufficient, it respectfully requests the opportunity to file a Second Amended Cross-Claim expanding on the allegations on this issue. The FAC was filed to respond to the criticisms of the initial Cross-claim set forth in Mrs. Field's first Motion to Dismiss. The issues that implicate equitable estoppel and the argument about "retroactive set-off" first appeared in the Reply to the Opposition to the Motion to Dismiss the FAC. It would be patently unfair for Mrs. Fields to argue that MFGPC should not be given an opportunity to amend its Cross-Claim to respond to arguments that were raised at such a late date.

## VI. CONCLUSION

As to the issues that were not resolved at the October 29 hearing, the Motion to Dismiss should be denied.

Dated this 13th day of November, 2015.        DUMAS & KIM, APC

/s/ James A. Dumas, Jr.
James A. Dumas
*Attorneys for MFGPC, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing **SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM AND CROSS-CLAIMS** was electronically filed on the date first above written thereby served upon the parties identified in the Court's CM/ECT system report on the 13th day of November, 2015.

/s/ James A. Dumas, Jr.
James A. Dumas
*Attorney for MFGPC, LLC*

| | |
|---|---|
| Avery Samet | asamet@samlegal.com, jhoyte@samlegal.com |
| Bijan Amini | bamini@samlegal.com, jhoyte@samlegal.com |
| James A. Dumas | jdumas@dumas-law.com |
| Peter W. Guyon | pguyon@yahoo.com |
| Rod N. Andreason | randreason@kmclaw.com, lsledge@kmclaw.com |

United States District Court
District of Utah
Senior Judge Dee Benson
351 S. West Temple, Crt. Room: Room 8.200
Salt Lake City, Utah 84101

11