# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MRS. FIELDS FRANCHISING, LLC, a Delaware limited liability company; and MRS. FIELDS FAMOUS BRANDS, LLC, a Delaware limited liability company, dba Famous Brands International, <br><br> Plaintiffs, <br><br> v. <br><br> MFGPC, INC., a California corporation, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING PRELIMINARY INJUNCTION** <br><br> Civil No. 2:15-cv-0094-JNP-DBP <br><br> Judge Jill N. Parrish <br> Magistrate Judge Dustin B. Pead |
| MFGPC, INC., a California corporation, <br><br> Counterclaimant, <br><br> v. <br><br> MRS. FIELDS FRANCHISING, LLC, a Delaware limited liability company; and MRS. FIELDS FAMOUS BRANDS, LLC, a Delaware limited liability company, dba Famous Brands International, <br><br> Counterclaim Defendants. | |

This matter is before the court on the Motion for Preliminary Injunction[1] (ECF No. 147) filed by Defendant and Counterclaim Plaintiff MFGPC, Inc. ("MFGPC") seeking relief against Plaintiffs and Counterclaim Defendants Mrs. Fields Franchising, LLC and Mrs. Fields Famous

---

[1] Although originally filed as a motion for a Temporary Restraining Order ("TRO"), the court treats this as a motion for Preliminary Injunction under Fed. R. Civ. P. 65(a) because Plaintiffs/Counterclaim Defendants had notice of the motion and the opportunity to present evidence and brief the matter.

Brands International (collectively "Mrs. Fields")[2] on October 13, 2018. The court conducted a full evidentiary hearing on the motion on January 14, 2019 ("the Hearing").

At the Hearing, MFGPC was represented by Brian M. Rothschild and Cedar Cosner of Parsons Behle & Latimer. Mrs. Fields was represented by Rod N. Andreason of Kirton McConkie. At the hearing the court received MFGPC's Exhibits A–H, M–Q, and S–JJ, and Mrs. Fields' Exhibits 1–33 and 35–45. The court heard from the following witnesses: Christopher Lindley, Cameron Broadbent, Bradford Kullberg, Betsy Schmandt, Dustin Lyman, and Joshua Kirschbaum.

The court has reviewed and considered the pleadings and orders on file, the testimony of the witnesses, exhibits received into evidence, and the parties' proposed findings of facts and conclusions of law. The court concludes that MFGPC has established each of the required elements for the court to grant temporary injunctive relief: 1) likelihood of success on the merits; 2) irreparable harm; 3) the potential harm to MFGPC outweighs any potential harm to Mrs. Fields; and 4) the requested injunction is not adverse to the public interest. MFGPC's Motion for Preliminary Injunction is hereby granted, and MFGPC is hereby restored to all of its rights under the Trademark License Agreement dated April 30, 2003 between the parties.

## FINDINGS OF FACT[3]

1. Mrs. Fields is the owner of the "Mrs. Fields" trademark ("Trademark"), a highly recognizable and established brand of snack food cookie products. Prelim. Inj. Hr'g Tr. at 21:23–22:6, Jan 14, 2019. ("Hr'g Tr.").

---

[2] MFGPC also moved for entry of a preliminary injunction against "Doe Defendants." But no "Doe Defendants" were given notice or afforded the opportunity to present evidence. What is more, the court denied MFGPC's motion to amend its counterclaim complaint to add Doe Defendants. For these reasons, this order will not be entered against any Doe Defendants.

[3] To the extent any finding of fact constitutes a conclusion of law, it is adopted as such.

2. MFGPC is an operating company that was founded by Christopher Lindley to manufacture and produce prepackaged popcorn products bearing the Mrs. Fields Trademark. Hr'g Tr. 8:2–22.

3. MFGPC and Mrs. Fields are parties to the Trademark License Agreement, dated April 30, 2003, a binding and enforceable written contract between MFGPC and Mrs. Fields comprising 21 single-spaced pages, under which the parties performed for more than 10 years. Ex. O (the "Trademark License Agreement"); Memorandum Decision and Order Granting MFGCP's Motion for Summary Judgment ("Order Mot. S.J.") at 2, ECF No. 132; Memorandum Decision and Order Granting in Part MGFPC's Motion to Amend ("Order Mot. Amend") at 3, ECF No. 171; Hr'g Tr. 6:25–7:7, 8:23–9:12.

4. Under the Trademark License Agreement, Mrs. Fields granted MFGPC the exclusive, worldwide right to manufacture, market, and sell prepackaged, popcorn products bearing the Trademark. Ex. O; Order Mot. S.J. at 2; Hearing Tr. 12:5–14, 12:21–24, 16:3–12.

5. Under the Trademark License Agreement, if Mrs. Fields sells Mrs. Fields Branded Popcorn, it must source that popcorn through MFGPC. Additionally, under the Trademark License Agreement, MFGPC is permitted to sell Mrs. Fields Branded Popcorn to Mrs. Fields at a profit, based on a most favored nations pricing structure, which is the lowest price for which MFGPC sells the product in the marketplace. Ex. O; Hr'g Tr. 14:9–15:2.

6. Under the Trademark License Agreement, Mrs. Fields is prohibited from competing with MFGPC by making Mrs. Fields branded popcorn or licensing the right to use the Mrs. Fields Trademark for use on popcorn. Ex. O.; Hr'g Tr. 15:5–8. The Trademark License Agreement does not prohibit MFGPC from selling its business or its stock nor does it terminate the Agreement upon a change in control. Hr'g Tr. 15:12–20.

7. Mrs. Fields has additional obligations relating to approval of packaging and ingredients, which are set forth in the Trademark License Agreement. Ex. O; Hr'g Tr. 36:24–38:7.

8. MFGPC acquired the Trademark License Agreement by paying $450,000 in licensing fees and guaranteed royalties during the initial term of the Trademark License Agreement. Hr'g Tr. 9:15–24.

9. The Trademark License Agreement provided for an "Initial Term" of five years, beginning on April 30, 2003. At the end of the Initial Term, the Agreement automatically renewed for successive five-years terms ("Option Periods") as long as MFGPC was not in material breach and "until such time as either party terminates the Agreement upon no more [sic] than twenty (20) days prior written notice." To be effective, any attempted termination had to comport with the termination provisions set out in section 16(b) of the Agreement. *See* Trademark License Agreement § 16; Order Mot. S.J. at 4; Hr'g Tr. 16:3-11, 17:6–18.

10. MFGPC and Mrs. Fields performed under the Agreement for over a decade. MFGPC produced gourmet cookie popcorn that it distributed throughout the United States and internationally in Canada and Asia. Hr'g Tr. 13:10–22, 20:24–21:19.

11. MFGPC established relationships with co-packers, manufacturers, and retailers. Contracts with co-packers, manufacturers and retailers are established months before distribution can begin. Hr'g Tr. 151:4–13. MFGPC has maintained its relationship with co-packers and manufacturers. Hr'g Tr. 24:2–14. But MFGPC lost its relationships with retailers when Mrs. Fields wrongfully terminated its relationship with MFGPC. Hr'g Tr. 25:23–26:16.

12. On December 22, 2014, counsel for Mrs. Fields, Avery Samet, sent a letter to MFGPC in which Mrs. Fields purported to terminate the Agreement due to MFGPC's alleged failure to pay royalties. Order Mot. S.J. at 4. Mrs. Fields then filed the complaint in this case,

seeking a declaration that it had properly terminated the Trademark License Agreement. In response, MFGPC filed a counterclaim for breach of contract and sought a preliminary injunction to prevent the termination. The district court denied MFGPC's request for a preliminary injunction and later dismissed MFGPC's counterclaim for failure to state a claim. Mrs. Fields then voluntarily dismissed its claim for declaratory relief on July 18, 2016. MFGPC appealed on August 10, 2016.

13. Neither Mrs. Fields' current senior director of licensing and franchising, Besty Schmandt, nor current CEO, Johshua Kirschbaum, were involved in Mrs. Fields' attempted termination of MFGPC. Betsy Schmandt has been with Mrs. Fields for three years (since February 2016). Hr'g Tr. 119:12–120:20. Joshua Kirschbaum first started working with Famous Brands in September 2017 and became CEO in November of 2018. Hr'g Tr. 194:3–22. Both witnesses joined Mrs. Fields during the pendency of this litigation.

14. While MFGPC's appeal was pending, on September 22, 2017, Mrs. Fields entered into a new license agreement with Perfect Snax Prime, LLC ("Perfect Snax"), granting Perfect Snax a license to market and sell popcorn using the Mrs. Fields Trademark. Hr'g Tr. at 120:24–121:17; *see also* Ex. HH, the "Perfect Snax Agreement."

15. On January 30, 2018, the Court of Appeals for the Tenth Circuit reversed the district court's dismissal of MFGPC's counterclaim, holding that MFGPC had stated a claim for breach of contract and reinstating MFGPC's counterclaim for breach of the Trademark License Agreement. On remand, MFGPC seeks both specific performance of the Trademark License Agreement and damages for Mrs. Fields' breach of the Agreement. Mrs. Fields has no active claim, having voluntarily dismissed its claim for declaratory relief prior to the appeal.

16. After remand, the parties filed cross-motions for summary judgment. Mrs. Fields filed on February 14, 2018 and MFGPC filed on May 16, 2018. While the summary judgment

motions were pending, Mrs. Fields continued to license to Perfect Snax the Trademark to produce and sell popcorn. But Perfect Snax failed to make required payments and, on July 3, 2018, Mrs. Fields sent Perfect Snax a notice of default. Mrs. Fields terminated the Perfect Snax Agreement on August 7, 2018. Ex. DD; Hr'g Tr. 124:2–6.

17. A little over two weeks later, on August 20, 2018, this court issued its ruling on the cross-motions for summary judgment. The court held that under the plain language of the Agreement, MFGPC had no obligation to pay minimum Guaranteed Royalties after the initial five-year option period. As a result, Mrs. Fields' attempted termination of the Agreement constituted an improper repudiation and total breach of the Trademark License Agreement by Mrs. Fields. Order Mot. S.J. at 21. Thus, the court entered summary judgment in favor of MFGPC on the first three elements of its counterclaim holding that: 1) the parties' relationship was governed by a valid contract, 2) MFGPC had substantially performed, and 3) Mrs. Fields committed an actionable breach by improperly repudiating the contract. Because MFGPC had not moved for summary judgment as to the remedy, the court left the remedy issue to another time. Order Mot. S.J. at 28–29.

18. At the time the court entered partial summary judgment in favor of MFGPC, Mrs. Fields was not licensing the Trademark to Perfect Snax, having terminated its licensing agreement with Perfect Snax on August 7, 2018, nor had Mrs. Fields licensed the Trademark to anyone else. Then, seven days after this court had entered summary judgment against Mrs. Fields, on August 27, 2018, Mrs. Fields entered into a Reinstatement Agreement with Perfect Snax, reinstating Perfect Snax's license under slightly more onerous terms than were contained in the parties' original agreement. Ex. DD; Hr'g Tr. 124:2–6, 125:10–19, 126:2–4.

19. Perfect Snax has plans to distribute a competing cookie popcorn product, Cookie

Pop, using the Trademark in mass retail. *Id.* at 101:4–103:5, 104:11–105:6, 113:16–25; Ex. EE, Emails; Ex. 43.

20. After the reinstatement of the Perfect Snax Agreement, Perfect Snax again breached the agreement by failing to submit the required royalty reports. At the hearing on MFGPC's motion for preliminary injunction, Mrs. Fields represented that it has the right to terminate the Perfect Snax Agreement. Hr'g. Tr. 125:20–22, 126:2–4, 16–18.

21. MFGPC's exclusive right to market Mrs. Fields Branded Popcorn is being wrongfully denied by Mrs. Fields' grant of a competing license to Perfect Snax. *Id.* at 101:4–103:5, 104:11–105:6, 113:16–25; Ex. EE; Ex. 43.

22. The exclusive right to market the Trademark is valuable because the Mrs. Fields Trademark enjoys extremely high international brand recognition, high favorability, and stands for premium quality, indulgence, and deliciousness in the baked goods category. Hr'g Tr. 59:10–19, 90:15–91:15, 91:22–92:18, 130:3–12, 194:23–195:4, 212:23–213:8.

23. The rights granted to MFGPC under the Trademark License Agreement are valuable to MFGPC because:

   a. The Mrs. Fields Trademark is valuable;
   b. MFGPC's licensed territory was world-wide;
   c. MFGPC's license was effectively perpetual absent material breach;
   d. MFGPC's license was exclusive;
   e. Mrs. Fields could not source Mrs. Fields-branded popcorn from any other source and MFGPC could sell to Mrs. Fields at a profit; and
   f. MFGPC was granted substantial latitude to sell its business without losing the license.

Hr'g Tr. 55:14–20; 90:3–92:18, 93:23–94:19; Ex. O.

24. The above-described terms of the Trademark License Agreement are unusually licensee-friendly and would be difficult, if not impossible, to obtain in today's licensing environment. Hearing Tr. 9:13–22; 94:11–19; 113:16–25. Because (a) the right to use the Trademark is unusually valuable and unique, and (b) the Trademark License Agreement contains such licensee-favorable terms, it is highly unlikely that MFGPC could replace the Trademark License Agreement with a comparable agreement. *Id.* at 94:23–95:12.

25. Calculating damages for Mrs. Fields' wrongful termination of MFGPC will be difficult, if not impossible. First, the damages for the interruption of MFGPC's business will be difficult to calculate because Perfect Snax's product, CookiePop, occupies a different product position than MFGPC's gourmet popcorn and cannot be readily used as a proxy for computing damages. Hearing Tr. 98:19–99:7, 153:25–154:5, 195:5–15.

26. There are several material differences between the brands. CookiePop does not use real chocolate, nuts, or Mrs. Fields Cookies. Hr'g Tr. 98:19–99:7; 153: 25–154:5; 195:5–15. The CookiePop packaging does not communicate the same high-quality indulgence associated with the popcorn previously sold by MFGPC. *Id.* at 99:15–100:3. Additionally, Mrs. Fields Trademark is a "sub-brand" on the packaging, meaning it is displayed below and smaller than the Cookie Pop logo. *Id.* at 61:24–62:3; Ex. AA; Ex. G; Ex. H. Cookie Pop will also be sold at retailers such as Wal-Mart and Sam's Club, which are markedly different than the high end retailers where MFGPC's product was sold. Hr'g Tr. 13:13–13:22; 104:11–22.

27. Calculating damages for permanent deprivation of the license will be practically impossible and would require speculation (Hr'g Tr. at 107:20–112:4, 118:7–12) because there is no comparable transaction in the marketplace (*Id.* at 105:7–107:19; 108:18–25, 112:6–22); and

proxy measures like prior performance are of limited use because they are tainted by the great recession preceding the breach and by a fire that significantly disrupted MFGPC's ability to ship its product (Hr'g Tr. 105:7–107:19).

28. MFGPC would not be able to purchase a comparable license in the marketplace because the licensing landscape has changed dramatically since 2003 to be much more licensor-friendly, and a comparable license likely could not be obtained. *Id.* at 94:11–95:12, 105:7–107:19; 108:18–25, 112:6–22.

## **ANALYSIS**

As the party seeking a preliminary injunction, MFGPC "must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). Although Tenth Circuit case law contemplates a higher pleading standard for certain "disfavored" types of injunctions,[4] the court need not address whether this injunction is disfavored[5] because the court

---

[4] There are three types of disfavored injunctions: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Fish v. Kobach*, 840 F.3d 710, 723–24 (10th Cir. 2016) (internal citation omitted).

[5] The parties only briefly discuss this issue. In Mrs. Fields' initial opposition to MFGPC's motion, Mrs. Fields makes a conclusory statement that the requested injunction is disfavored because it either seeks to alter the status quo or is mandatory, but does not elaborate further. *See* Opp'n Mot. Prelim. Inj. at 18. MFGPC then correctly responds that the requested injunction would not alter the status quo because the court must look to "the last uncontested status between the parties which preceded the controversy" to determine the status quo. *See* Reply Mot. Prelim. Inj. at 11 (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001)). The last uncontested status in this case was before Mrs. Fields' breach, when the Agreement was still in effect. However, MFGPC does not address whether this is a mandatory injunction.

finds that Mrs. Fields has made "a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms," and thus has met the "heightened burden" that is required for disfavored injunctions. *Gen. Motors*, 500 F.3d at 1226 (quoting *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft,* 389 F.3d 973, 976 (10th Cir. 2004) (en banc, per curiam), *aff'd,* 546 U.S. 418, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006)); *see also N.M. Dep't of Game & Fish v. U.S. Dep't of Interior*, 854 F.3d 1236, 1246 n.15 (10th Cir. 2017) (declining to reach the issue).

Mrs. Fields opposes MFGPC's motion for a preliminary injunction on the grounds that MFGPC has not met its burden to establish its entitlement to the requested remedy and on the grounds that MFGPC lost its right to a preliminary injunction when it failed to appeal the denial of a preliminary injunction in 2015 by United States District Judge Dee Benson. *See* Opp'n Mot. Prelim. Inj. at 10 (quoting *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997)) ("The law-of-the-case doctrine bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not."). But the "law-of-the-case" doctrine does not prevent MFGPC's renewed motion for a preliminary injunction. Judge Benson denied the motion for a preliminary injunction "primarily" because MFGPC "failed to meet its burden of proving to the court . . . a likelihood of success on the merits" for its breach of contract counterclaim. Although it is true that MFGPC did not appeal Judge Benson's initial denial of a preliminary injunction, MFGPC did appeal Judge Benson's subsequent dismissal of MFGPC's counterclaim, and the Tenth Circuit reversed. Thus, while MFGPC could not raise Judge Benson's denial of its preliminary injunction on appeal, its failure to appeal the denial does not preclude this court from issuing a preliminary injunction in MFGPC's favor now that MFGPC's counterclaim has been reinstated. *See Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 445 (8th Cir.

1995).[6] MFGPC's counterclaim reinstated by the Tenth Circuit includes a claim for specific performance of the contract and for preliminary injunctive relief. MFGPC's amended counterclaim includes claims for other equitable relief as well. Thus, nothing prevents the court from addressing MFGPC's right to a preliminary injunction.

### A. **Likelihood of Success on the Merits.**

The first factor for consideration on a motion for preliminary injunction is the movant's likelihood of success on the merits. In short, MFGPC must establish that it is more probable than not that it will be successful on the merits of its claim. *Gen. Motors*, 500 F.3d at 1226. Here, this element is easily met because the court has already entered summary judgment in favor of MFGPC. MFGPC's counterclaim is for breach of the Licensing Agreement. Under Utah law, "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 230–31 (Utah 2014) (internal citation omitted). The court has already entered summary judgment holding that: 1) the parties' relationship was governed by a valid contract, 2) MFGPC had substantially performed, and 3) Mrs. Fields committed an actionable breach by improperly repudiating the contract.

The only outstanding issue is one of remedy. The court finds that MFGPC can establish that it has been damaged as a result of Mrs. Fields' breach. Thus, to demonstrate a likelihood of

---

[6] Nor is MFGPC precluded from arguing irreparable harm. At the hearing before United States District Judge Benson on MFGPC's first motion for a preliminary injunction, MFGPC represented that it would not be able to continue selling popcorn without an injunction from the court granting it the right to continue and that its business would be over. Mrs. Fields argues that MFGPC's representations before Judge Benson preclude MFGPC from testifying that it can now continue operating under the Trademark License Agreement. But the court finds that MFGPC's testimony before Judge Benson related only to whether or not MFGPC could continue operating at that time without an injunction, not whether MFGPC could ever be restored to operations. *See* Benson Prelim. Inj. Hr'g Tr. 22:21–27:23.

11

success on the merits, MFGPC's only burden is to show a likelihood that the court will award it the equitable relief that it seeks. After considering the evidence presented at the evidentiary hearing, the court concludes MFGPC has met its burden of showing a likelihood that the court will order Mrs. Fields to reinstate the licensing agreement with MFGPC in addition to awarding damages for the period during which the license was wrongfully terminated.

1. **Damages**

MFGPC has established that it is likely entitled to damages. MFGPC paid $450,000.00 in consideration for the Licensing Agreement. MFGPC spent a decade establishing its business, but since 2015, MFGPC has been unable to sell popcorn because of Mrs. Fields' breach. While the damages amount has yet to be determined, MFGPC will almost certainly be entitled to damages from the date of Mrs. Fields' breach through the date of trial.

2. **Specific Performance**

The court has broad discretion to order specific performance. *Morris v. Sykes*, 624 P.2d 681, 684 (Utah 1981) ("Specific performance is a remedy of equity which is addressed to the sense of justice and good conscience of the court, and accordingly, considerable latitude of discretion is allowed in his determination as to whether it shall be granted and what judgment should be entered in respect thereto . . . ."). Under Utah law, a party seeking specific performance must prove 1) that a contract exists; 2) that the essential terms of the contract are clear and definite; and 3) that there is no adequate remedy available at law.[7]

---

[7] *Tooele Assocs. Ltd. v. Tooele City*, 251 P. 3d 835, 835 (Utah 2011) (a contract must exist); *1-800 CONTACTS, INC. v. Weigner*, 2005 UT App 523, ¶ 8 ("Specific performance is an equitable remedy which 'cannot be required unless all terms of the agreement are clear. The court cannot compel the performance of a contract which the parties did not mutually agree upon.'") (quoting *Pitcher v. Lauritzen*, 423 P.2d 491, 493 (Utah 1967)); *South Shores Concession v. State*, 600 P. 2d 550, 552 (Utah 1979) (there must be no adequate remedy available at law).

As this court has previously ruled, the Trademark License Agreement is a binding and enforceable written contract. What is more, the terms of the Trademark License Agreement, are clear and definite. Indeed, the parties performed under the contract for over a decade. Finally, there is not an adequate remedy at law. Although MFGPC is certainly entitled to damages due to Mrs. Fields' breach, these damages will very difficult, if not impossible, to calculate.

First, the value of the license itself is unclear. MFGPC acquired the license fifteen years ago and since that time the franchising landscape has changed significantly. Replacing the license would be difficult because there are a limited number of cookie brand franchises available. What is more, it would be impossible for MFGPC to negotiate a new license on terms as favorable as its old license.

Second, damages are difficult if not impossible to calculate. Damages from the date of breach in 2015 to the present are difficult to calculate because there are no comparable products from which such damage could be estimated. CookiePop is significantly different from MFGPC's gourmet cookie popcorn and Perfect Snax has only just begun selling its product over the past year. Nor is MFGPC's prior profitability a good prediction of its future profitability because the great recession and the warehouse fire reduced its profits prior to the breach. And while it will be difficult to calculate damages with a reasonable degree of certainty from the date of Mrs. Fields' breach through the present, it would require impermissible speculation to calculate MFGPC's future losses.

Accordingly, it appears highly unlikely that MFGPC could be made whole through an award of money damages because (a) it would be difficult if not impossible to accurately calculate the damages to MFGPC of being permanently deprived of the right to use the Mrs. Fields

Trademark for popcorn; and (b) no license for a comparable brand on such favorable terms could be obtained. In short, money damages alone would not render substantial justice to MFGPC.

In determining whether to order specific performance, the court will also be required to balance the potential difficulties in supervising an injunction against the benefit of specific performance. RESTATEMENT (SECOND) OF CONTRACTS § 366 (1981), Effect of Difficulty in Enforcement or Supervision ("A promise will not be specifically enforced if the character and magnitude of the performance would impose on the court burdens in enforcement or supervision that are disproportionate to the advantages to be gained from enforcement and to the harm to be suffered from its denial."). Although Mrs. Fields argues it would be impossible for Mrs. Fields and MFGPC to resume business, the court is unconvinced that specific performance of the Trademark License Agreement would require any supervision by the court. MFGPC has established that it is capable of performance through its decade-long track record and Mrs. Fields' obligations under the license agreement are minimal. Aside from approving package designs and ingredients, its only obligations are to allow MFGPC to use the Mrs. Fields Trademark and refrain from competing with it or licensing any else to do so.

What is more, neither the current CEO nor the senior licensing director of Mrs. Fields could articulate any particularized reason why they would have difficulty doing business with MFGPC. The reality is that none of Mrs. Fields' current executives were involved with the termination of the Agreement. At the hearing, the executives' only basis for testifying that it would be difficult for them to resume business with MFGPC was that they did not want to do business with a party with whom they had been in litigation. But it was Mrs. Fields who initially filed suit and Mrs. Fields may not rely upon its own decision to file suit as a basis for punishing MFGPC, especially when Mrs. Fields did not prevail on its claim. MFGPC performed its obligations and Mrs. Fields

had no problem with MFGPC's products. Thus, there are no irreconcilable conflicts between the parties that could not be overcome. Unless Mrs. Fields intends to breach or find further pretense to terminate MFGPC, further court involvement will be unnecessary. On balance, the benefit of ordering specific performance over damages is significant.

MFGPC has established a strong likelihood that this court will order specific performance by Mrs. Fields of the Trademark License Agreement. Thus, the court concludes that MFGPC is likely to succeed on the merits of its claim for equitable relief.

### B. Irreparable Harm

The irreparable harm requirement is the "single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). It must be "certain and great" and more than "merely serious or substantial" in order to qualify as irreparable. *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001). Mrs. Fields' breach of the provision of the Trademark License Agreement that grants MFGPC the exclusive right to use the Mrs. Fields Trademark to sell all Mrs. Fields Branded Popcorn is the type of breach that can constitute irreparable harm. *Dominion Video*, 356 F.3d at 1260-63 (10th Cir. 2004) (holding, in a case on the exclusive right to sell DISH branded satellite receivers, that "it is clear that irreparable harm often arises from the breach of an exclusivity clause."). Other factors supporting irreparable harm from this type of breach include: "inability to calculate damages, harm to goodwill, diminishment of competitive positions in marketplace, loss of employees' unique services, the impact of state law, and lost opportunities to distribute unique products." *Id.* at 1263. As discussed above, MFGPC has shown that it will be irreparably harmed should the court fail to enter an injunction at this time.

In the absence of an injunction, MFGPC will be deprived of an opportunity to distribute a unique product—Mrs. Fields-branded popcorn. Mrs. Fields would be free to license to other third-parties, and MFGPC would suffer a further diminishment of its competitive position in the marketplace. Because manufacturing and retail contracts must be established months in advance, further delay will continue to degrade MFGPC's ability restart its business. MFGPC (and the court) would have extreme difficulty calculating damages for the future and permanent deprivation of MFGPC's right to exclusive use of the Trademark for selling Mrs. Fields Branded Popcorn. The speculative nature of calculating damages will only increase over time. Thus, the court concludes that MFGPC will suffer irreparable harm if the temporary injunction is denied.

C. **Balance of Harms**

MFGPC must also establish that its threatened injury outweighs the harm injunctive relief may cause Mrs. Fields. MFGPC has established that it faces irreparable harm as set forth in the preceding discussion. The court must now balance the potential harm to Mrs. Fields and to any third parties who will be affected, including Perfect Snax.

Mrs. Fields will be harmed because it will not be able to continue its business relationship with Perfect Snax. But this harm to Mrs. Fields does not weigh against entering injunctive relief because the harm is of Mrs. Fields' own making. As has been recognized in many circuits, "the injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002).[8] Any harm to Mrs. Fields

---

[8] *See also Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806 (3d Cir. 1998) ("The self-inflicted nature of any harm suffered by [defendant] also weighs in favor of granting preliminary injunctive relief.") and *Sierra Club, Inc. v. Bostick,* 539 F. App'x 885, 893 (10th Cir. 2013) (collecting cases).

16

arises from either (1) Mrs. Fields' initial breach of the Trademark License Agreement, or (2) Mrs. Fields' decision to reinstate the Perfect Snax Agreement *after* this court granted MFGPC's Motion for Summary Judgment against Mrs. Fields. Mrs. Fields wrongly breached the Agreement with MFGPC in attempting to terminate the Agreement. The effort it had to place into finding new franchisees for cookie popcorn is a result of that wrongful action. And while Mrs. Fields' decision to license the trademark to Perfect Snax after Judge Benson initially dismissed the case is understandable, Mrs. Fields is solely at fault for its decision to reinstate its previously terminated agreement with Perfect Snax after this court had granted summary judgment in favor of MFGPC and found that Mrs. Fields' termination of MFGPC was invalid. In light of its behavior, Mrs. Fields cannot now rely on the harm that will be caused by the termination of its agreement as a reason for denying an injunction.

Neither can Mrs. Fields rely on any harm to Perfect Snax. At this juncture, Mrs. Fields has the contractual right to terminate its licensing agreement with Perfect Snax based on Perfect Snax's failure to abide by the terms of that agreement. Moreover, any harm to Perfect Snax arising from an injunction was caused by Mrs. Fields and not MFGPC. It would therefore be inappropriate to punish MFGPC for Mrs. Fields' behavior by allowing Mrs. Fields to continue its business with Perfect Snax. Nor is the court precluded from entering an order that will affect a third party not joined. *See* Fed. R. Civ. P. 65(d)(2) ("The order binds . . . the parties . . . [and] other presons who are in active concert or participation with [the parties]."). Perfect Snax has an interest in the outcome of this action, but neither existing party moved to join Perfect Snax as a required party prior to the hearing on the motion for preliminary injunction, nor did Perfect Snax move to

intervene.[9] Thus to the extent that Perfect Snax's rights may be affected by an injunction, Perfect Snax must seek compensation from Mrs. Fields.[10]

Because MFGPC will suffer irreparable harm and the only harm faced by Mrs. Fields and third parties arises from Mrs. Fields' own breaches of its obligations and its decision to undertake the risks associated with these breaches, the balance of harms tips decidedly in favor of MFGPC.

### D. The Public Interest

The final factor to be considered in ruling on a motion for preliminary injunction is whether the injunction is adverse to the public interest. In this case, the court concludes that the public has a strong interest in honoring and enforcing lawful contractual obligations. *See ClearOne Commc'ns, Inc. v. Chiang*, 608 F. Supp. 2d 1270, 1281 (D. Utah 2009), *aff'd in part sub nom. ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735 (10th Cir. 2011) ("Although the court recognizes the public has a strong interest in a competitive marketplace, the public has an even greater interest in honoring contractual obligations and in fostering honest competition."); *Neways Inc. v. Mower*, 543 F. Supp. 2d 1277, 1290 (D. Utah 2008) (determining that the public interest favored the issuance of an injunction where the injunction sought "only to prevent the disavowal of existing contractual duties and to prohibit unfair competition" because of the public interest "in fair competition and in the enforcement of lawful contractual obligations").

The public interest favors the issuance of MFGPC's requested injunction, especially as this injunction will discourage Mrs. Fields from engaging in the type of behavior it has in the past.

---

[9] MFGPC moved to join Perfect Snax as a counterclaim defendant on January 31, 2019, seventeen days after the preliminary injunction hearing, but that motion will be decided independently of MFGPC's motion for preliminary injunction.

[10] According to the testimony of Mrs. Fields' employees, Mrs. Fields has the right to terminate the agreement with Perfect Snax, meaning that Perfect Snax is not entitled to enforce its licensing agreement with Mrs. Fields' in any event.

18

Emails sent by former CEO Dustin Lyman indicate that Mrs. Fields has a history of disregarding the rights of its licensees. Not only did Mrs. Fields breach its agreement with MFGPC, in an email dated August 8, 2018, Lyman ordered reinstatement of the Perfect Snax agreement so that Mrs. Fields would have "adequate time to seek a better partner" and stated that "[i]t is easier to entice large licensee's [sic] when existing distribution is in place." *See* Exhibit JJ. In contrast, MFGPC seeks only to enforce Mrs. Fields' lawful contractual obligations, prevent Mrs. Fields' on-going breach of those obligations, and prevent competition that is contrary to the terms of the Trademark License Agreement. Thus, MFGPC's requested injunction is not adverse to the public interest.

### E. Conclusion

In summary, MFGPC has demonstrated each of the required elements for the issuance of a preliminary injunction: (1) likelihood of success on the merits, (2) irreparable harm in the absence of injunctive relief, (3) the balance of harms weighs in MFGPC's favor, and (4) public policy favors the issuance of the injunctive relief. The court concludes that MFGPC is entitled to its requested injunctive relief.

## ORDER

NOW THEREFORE, Mrs. Fields Franchising and Mrs. Fields Famous Brands, and their respective officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them, are hereby **ORDERED**, within **thirty days** of the date of this order:

**I.** To refrain from using the Mrs. Fields Trademark in association with Mrs. Fields-branded popcorn in accordance with the Trademark License Agreement;

**II.** To refrain from licensing any third parties to use the Mrs. Fields Trademark in association with Mrs. Fields-branded popcorn;

**III.** To terminate any licenses and purported licenses to third parties to manufacture, market, and sell Mrs. Fields-branded popcorn;

**IV.** To recognize MFGPC as the exclusive worldwide licensee and source of Mrs. Fields-branded popcorn, to enforce MFGPC's exclusive right to use the Trademark in the world-wide territory in good faith, and to forward all orders received for Mrs. Fields-branded popcorn to MFGPC for fulfillment, and, if it chooses to sell Mrs. Fields-branded popcorn, to resume selling exclusively MFGPC-manufactured Mrs. Fields-branded popcorn; and

**V.** To remove or cause to be removed all competing Mrs. Fields-branded popcorn using the Mrs. Fields Trademark from sale, including from all retailers and online distributors, worldwide.

**VI.** This preliminary injunction shall be in place until the final resolution of this action at trial unless otherwise ordered by the court.

DATED March 19, 2019.

BY THE COURT:

_____
JILL N. PARRISH, Judge
United States District Court