# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **MRS. FIELDS FRANCHISING, LLC,** a Delaware limited liability company,<br><br>  Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>**MFGPC, INC.,** a California corporation,<br><br>  Defendant and Counterclaimant,<br><br>and<br><br>**MRS. FIELDS FAMOUS BRANDS, LLC,** a/k/a Famous Brands International,<br><br>  Counterclaim Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:15-cv-00094-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant MFGPC, Inc.'s Request for Entry of Revised Scheduling Order. The court held a hearing on the request on February 3, 2020. At the hearing, Defendant was represented by Brian M. Rothschild, and Plaintiff was represented by Rod N. Andreason. The court took the matter under advisement. The court considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the request. Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

This case arose due to a dispute regarding a Trademark License Agreement (the "License Agreement") between Mrs. Fields Franchising, LLC ("Fields Franchising") and MFGPC, Inc.

("MFGPC"). The parties entered into the License Agreement in April 2003 for an initial term of sixty months. Following the initial term, the License Agreement would automatically renew for another five years unless (1) specific circumstances occurred under which the parties could terminate the License Agreement; or (2) the parties exercised their right to prevent the License Agreement from renewing. In December 2014, Fields Franchising notified MFGPC that it considered the License Agreement to not have renewed in 2013, but to the extent that it had renewed, Fields Franchising intended to terminate it.

In 2015, Fields Franchising filed a complaint against MFGPC seeking a declaratory judgment that the License Agreement was indeed terminated and no longer in effect. After Fields Franchising filed its complaint, MFGPC responded with a counterclaim and cross-claims against Fields Franchising and Mrs. Fields Famous Brands, LLC (collectively, "Mrs. Fields") alleging, among other things, that Fields Franchising had breached the License Agreement. MFGPC also moved for a temporary restraining order and a preliminary injunction seeking specific performance of the License Agreement, which the court ultimately denied. Then, in late 2015 and early 2016, Mrs. Fields moved to dismiss MFGPC's claims, and Fields Franchising moved to voluntarily dismiss its own claim for a declaratory judgment. The court subsequently granted both motions, and MFGPC appealed. In January 2018, the Tenth Circuit issued an order affirming Fields Franchising's voluntary dismissal as well as the dismissal of some of MFGPC's claims. However, the Tenth Circuit reversed the district court's dismissal of MFGPC's counterclaim for breach of contract and remanded the case for further proceedings.

On remand, the parties moved for summary judgment on MFGPC's counterclaim for breach of contract. In August 2018, the court issued its decision denying Fields Franchising's motion for summary judgment and granting in part MFGPC's motion for summary judgment.

The court concluded that MFGPC had established the first three elements of its counterclaim and determined that "[t]he only issue that remain[ed] [was] damages." *Mrs. Fields Franchising, LLC v. MFGPC, Inc.*, No. 2:15-CV-00094-JNP, 2018 WL 3972924, at *15 (D. Utah Aug. 20, 2018) (unpublished). Following the court's order on the motions for summary judgment, MFGPC, once again, moved for a temporary restraining order and preliminary injunction seeking specific performance of the License Agreement. In March 2019, the court granted MFGPC's motion and entered a preliminary injunction. Mrs. Fields subsequently appealed that decision. Importantly, the court vacated the previous scheduling order and the deadlines contained therein pending the Tenth Circuit's decision. In late 2019, the Tenth Circuit reversed the court's decision granting a preliminary injunction and returned jurisdiction over the case to this court.

## DISCUSSION

Since the Tenth Circuit's November 2019 decision, the parties have held several planning meetings and conferences under Rule 26(a) but have been unable to agree to a proposed scheduling order. Put briefly, the parties disagree as to whether any further discovery on the issue of damages is required in light of the Tenth Circuit's most recent decision.

The discovery process is governed by Federal Rule of Civil Procedure 26(b). Specifically, Rule 26(b)(1) establishes the general scope of permissible discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

In analyzing Rule 26 and the scope of discovery, the Tenth Circuit has opined:

3

> [W]hen a party objects that discovery goes beyond that relevant to the claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. This good-cause standard is intended to be flexible. When the district court does intervene in discovery, it has discretion in determining what the scope of discovery should be. [T]he actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

*In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188–89 (10th Cir. 2009) (citations omitted) (internal quotation marks omitted).

Despite the fact that the above standard is relatively straightforward, the parties disagree as to the scope of remaining discovery in this case based on their respective interpretations of the Tenth Circuit's decision. In that decision, the Tenth Circuit concluded that the License Agreement did not constitute a "perpetual license," and based on Mrs. Fields' actions, Mrs. Fields would have prevented the License Agreement from renewing for a fourth term. *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1233–34 (10th Cir. 2019). Because the Tenth Circuit concluded that the License Agreement was not perpetual, it was unconvinced that calculating MFGPC's damages would be too difficult. *See id.* at 1234. Indeed, the court noted that it "appear[ed] that MFGPC's damages will be limited to . . . the remainder of the third five-year term of the License Agreement." *Id.* In further addressing the issue of damages, the Tenth Circuit opined:

> Here, it is undisputed that the parties operated under the terms of the License Agreement for nearly twelve years. Presumably, MFGPC's financial statements for all of those years are or will be available to the district court for assistance in calculating MFGPC's damages. The district court questioned the validity of such proof in this case "because," it stated, "the great recession and the warehouse fire reduced [MFGPC's] profits prior to [Fields Franchising's] breach." It is unclear to us, however, how the district court arrived at this conclusion. The "great recession" mentioned by the district court did not begin until approximately December of 2007, more than four years into the original term of the License Agreement, and

4

> ended in June of 2009, approximately four-and-a-half years prior to Fields Franchising's decision to terminate the License Agreement. Precisely why the years prior to or following the recession cannot serve as a reasonable proxy to determine MFGPC's damages is unclear and was not discussed at all by the district court. Similarly, the warehouse fire that was mentioned by the district court did not occur until January 13, 2013, over ten years into the parties' continuing business relationship, and approximately three-and-a-half years after the end of the recession. Setting aside the period of the great recession and the period following the warehouse fire, that leaves a total of approximately eight years and three months' worth of sales data of MFGPC's own products for the district court to consider for purposes of calculating damages. Nothing in the record or in MFGPC's briefs persuades us that this data cannot serve as a reasonable measure of MFGPC's damages.

*Id.* at 1235–36 (citations omitted). The Tenth Circuit also noted that the lack of comparable products is irrelevant given the "wealth of actual data regarding the sales of MFGPC's own products." *Id.* at 1236.

Based on the Tenth Circuit's decision, Mrs. Fields now opposes MFGPC's proposed scheduling order. First, Mrs. Fields claims that the decision establishes that MFGPC's only remedy for its breach of contract claim is lost profit damages for the few years remaining in the third term of the License Agreement. Second, it contends that the Tenth Circuit determined that MFGPC's profit and loss statements prior to Mrs. Fields' breach of the License Agreement constituted a wealth of information with which to determine MFGPC's lost profits.[1] And, as a final matter, Mrs. Fields points out that the proposed order is drafted in a standard format as if for the opening stages of litigation when this case has been going on since 2015 and has endured two appeals to the Tenth Circuit. Thus, especially when viewed in light of the Tenth Circuit's decision, Mrs. Fields contends that MFGPC's proposed scheduling order is broad and unfocused and would result in unnecessary discovery expenses. Moreover, it asserts that because MFGPC

---

[1] Mrs. Fields breached the License Agreement in December 2014.

5

has its own profit and loss statements with which to calculate its lost profits, requiring any further discovery on damages would not be proportional to the needs of this case.

In support of its proposed scheduling order, MFGPC argues that it would be improper for the court to limit the discoverability of evidence on damages when (1) the parties have yet to conduct any discovery on damages; and (2) the Tenth Circuit's decision makes no mention of any limitation that should be imposed on MFGPC's ability to discover information that relates to its damages. In addition, MFGPC lists various types of information that, it argues, are highly relevant and necessary to conduct an accurate analysis of its damages. Lastly, MFGPC contends that if Mrs. Fields takes issue with MFGPC's discovery requests, the proper procedure for resolving those issues would be to object to the requests, then resolve the objections before the magistrate judge over this case.

Having reviewed the parties' arguments and the Tenth Circuit's decision, the court concludes that the scope of remaining discovery in this case should be limited, but not to the extent that Mrs. Fields desires. Before explaining those limitations, the court first notes that while the Tenth Circuit opined that MFGPC's own sales data could serve "as a reasonable measure of MFGPC's damages," the Tenth Circuit did not conclude that MFGPC's own sales data was the *only* reasonable measure of damages or the *only* information relevant to MFGPC's damages. *Id.* at 1236. Thus, although MFGPC's own sales data is highly relevant and perhaps the best measure of MFGPC's damages, MFGPC is entitled to discover other information that may also be highly relevant to its damages.[2] Nevertheless, that information and the scope of discovery regarding MFGPC's damages must be limited in the following ways. First, discovery

---

[2] As the Tenth Circuit noted, "[g]enerally speaking, 'evidence of past profits in an established business' is the best 'proof of future profits.'" *Mrs. Fields Franchising*, 941 F.3d at 1235 (quoting *Palmer v. Conn. Ry. & Lighting Co.*, 311 U.S. 544, 559 (1941)).

is limited to the prepackaged popcorn sector of Mrs. Fields' business. Second, as the Tenth Circuit noted, the actual calculation of damages is limited to the remainder of the third five-year term, i.e., from December 2014—when Mrs. Fields breached the License Agreement—to April 2018—when the third five-year term ended. Third, given that Mrs. Fields would have prevented the License Agreement from renewing, the court concludes that information regarding Mrs. Fields' future valuations, plans, and initiatives for its prepackaged popcorn business beyond the third term are irrelevant and outside the proper scope of discovery in this case. Accordingly, MFGPC is precluded from seeking discovery on such information. Lastly, in addition to MFGPC's own profit and loss information, the court finds that the remaining discovery in this case should be focused on information regarding (1) the value of the License Agreement; (2) license agreements that Mrs. Fields entered into with third parties that violated MFGPC's exclusive rights under the License Agreement during the third five-year term; and (3) Mrs. Fields' own sales of its prepackaged popcorn products that violated MFGPC's exclusive rights under the License Agreement during the third term.

In addition to the above, the court also imposes the following limitations:

| | |
|---|---|
| Maximum Number of Depositions by Mrs. Fields | 5 |
| Maximum Number of Depositions by MFGPC | 5 |
| Maximum Interrogatories by any Party to any Party | 20 |
| Maximum Requests for Admissions by any Party to any Party | 20 |
| Maximum Requests for Production by any Party to any Party | 20 |

Importantly, however, the court finds that the timeline, deadlines, and all other information in MFGPC's proposed scheduling order to be proper and adequate. *See* ECF No. 243. As such, the

parties are directed to follow the proposed scheduling order, including its timeline, in all other respects.

As a final matter, in the event that Mrs. Fields objects to any of MFGPC's future discovery requests, those specific objections are to be resolved through the proper procedure before the magistrate judge over this case.

## CONCLUSION

Based on the foregoing reasoning, MFGPC's Request for Entry of Revised Scheduling Order is hereby GRANTED in part and DENIED in part.

Dated this 4th day of February, 2020.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge