# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MRS. FIELDS FRANCHISING, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>MFGPC, INC., a California corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING COUNTERCLAIM-DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND GRANTING IN PART MFGPC, INC.'S MOTION FOR AWARD OF ATTORNEYS' FEES**<br><br>Case No. 2:15-CV-00094-DAK<br><br>Judge Dale A. Kimball |
| MFGPC, INC., a California corporation,<br><br>Counterclaimant,<br><br>vs.<br><br>MRS. FIELDS FRANCHISING, LLC, a Delaware limited liability company, and MRS. FIELDS FAMOUS BRANDS, LLC, a Delaware limited liability company, dba Famous Brands International,<br><br>Counterclaim Defendants. | |

This matter is before the court on Plaintiffs/Counterclaim Defendants' ("Mrs. Fields") motion for attorneys' fees, and Defendants/Counterclaim Plaintiffs' ("MFGPC") motion for attorneys' fees. Both parties move for an award of contractual attorney fees pursuant to Fed. R. Civ. P. 54(d) and other applicable law. The court does not believe that any hearings will significantly aid in its determination of these motions. The court, therefore, renders the following Memorandum Decision and Order based on the materials submitted by the parties.

## BACKGROUND

On April 20, 2003, MFGPC and Mrs. Fields, through predecessor entities, entered into a licensing agreement (the "Agreement"). With respect to attorney fees, the Agreement provides as follows:

> **Costs and Attorney Fees.** If a claim for amounts owed by LHF to MFOC or its affiliates is asserted, in any judicial proceeding or appeal thereof, or if MFOC or LHF is required to enforce this Agreement in any judicial proceeding or appeal thereof, the party prevailing in such, proceeding shall be entitled to reimbursement of its reasonable costs and expenses, including reasonable accounting and legal fees, whether incurred prior to, in preparation for, or in contemplation of the filing of any written demand, claim, action, hearing or proceeding to enforce the obligations of this Agreement. If MFOC incurs expenses in connection with LHF's failure to pay when due amounts owing to MFOC, to submit when due any report, information or supporting records or otherwise to comply with this Agreement, or if LHF incurs expenses in connection with MFOC's failure to comply with this Agreement, including, but not limited to legal and accounting fees, the party incurring the expense shall be reimbursed by the other party for any such reasonable costs and expenses whit it incurs.

(ECF No. 311; Exh. A at § 22(k)).

In addition, the Agreement provides the following with respect to the availability of injunctive relief:

> **Temporary Restraining Orders.** Notwithstanding anything to the contrary contained in this Agreement, MFOC and LHF shall each have the right in a proper case to obtain temporary restraining orders and temporary or preliminary injunctive relief from a court of competent jurisdiction.

(ECF No. 311; Exh. A at § 22(i)).

The parties performed under the Agreement for over a decade. In December 2014, Mrs. Fields wrote to MFGPC to terminate the Agreement – citing MFGPC's failure to pay guaranteed royalties as the justification. (ECF No. 132 at 6). On January 19, 2015, MFGPC's counsel objected to the termination in a letter by asserting that MFGPC owed no outstanding royalties, and that Mrs. Fields owed MFGPC $26,660.43 for popcorn products. *Id.* at 11. In response, Mrs. Fields filed the original complaint in this case on February 10, 2015. (ECF No. 2). In the

complaint, Mrs. Fields alleged that MFGPC was in breach, and sought attorney fees and a declaration that the Agreement had been validly terminated. *Id*. MFGPC then filed a counterclaim for breach of contract and sought a preliminary injunction to prevent the termination. (ECF Nos. 10, 11, and 13).

The district court denied MFGPC's request for a preliminary injunction, granted a motion to dismiss MFGPC's counterclaims, and allowed Mrs. Fields to voluntarily dismiss its claim for declaratory relief. (ECF No. 240 at 12). MFGPC appealed the dismissal on August 10, 2016. While the appeal was pending, MFGPC changed counsel, hiring Parsons Behle & Latimer to advise on the supplemental proceeding, prepare and file the reply brief, and through its appellate counsel, Mr. Alan Mouritsen, appear and argue at the Tenth Circuit. (ECF No. 311 at ¶ 15). Also during the pending appeal, Mrs. Fields entered into a new license agreement with Perfect Snax Prime, LLC ("Perfect Snax"), granting Perfect Snax a license to market and sell popcorn using the Mrs. Fields trademark. (ECF No. 240 at 10). The Tenth Circuit eventually reversed the dismissal of MFGPC's breach of contract claim and remanded. (ECF No. 97).

On remand, the parties filed cross motions for summary judgment. Shortly before the decision on the summary judgments, the licensing agreement between Mrs. Fields and Perfect Snax was terminated. (ECF No. 240 at 10). On August 20, 2018, Mrs. Fields' motion for summary judgment was denied and MFGPC's motion for partial summary judgment was granted, with the court holding that Mrs. Fields' termination letter was a breach of contract and that the remaining issue to decide was remedies. (ECF No. 132). Seven days later, Mrs. Fields and Perfect Snax reinstated their licensing agreement, albeit under slightly more onerous terms. (ECF No. 240 at 10).

Following the summary judgment decision, MFGPC took the position that it had a "perpetual license" from Mrs. Fields – absent a material breach by MFGPC. In accordance with this position, MFGPC filed a motion seeking a preliminary injunction pursuant to § 22(i) of the Agreement and applicable law. (ECF No. 147). The district court agreed with MFGPC, holding that, unless breached by MFGPC, the Agreement would renew. (ECF No. 188). As a result, the district court issued an injunction that required Mrs. Fields to, among other things, refrain from licensing its trademark in association with popcorn to any third party, terminate any existing licenses associated with popcorn, and cause to be removed from the marketplace all Mrs. Fields-branded popcorn not produced by MFGPC. *Id*. This injunction required Mrs. Fields to dishonor its new license agreement with Perfect Snax. (ECF No. 316 at 4).

Mrs. Fields appealed the injunction. The Tenth Circuit ordered a stay on the injunction on April 29, 2019, and then reversed the preliminary injunction later that year. (ECF Nos. 224 and 240). The basis for that decision was that the Tenth Circuit rejected the "perpetual license" claim, and held rather that the Agreement could be terminated by notice at the end of each term. (ECF No. 240). Therefore, the Agreement would still have been validly terminated by Mrs. Fields effective April 30, 2018, limiting MFGPC's damages to its lost profits through that date. *Id*.

In early 2020, the parties had a dispute over discovery. On February 4, 2020, the court ordered discovery relevant to damages. (ECF No. 250). Months later, MFGPC filed another short form discovery dispute. (ECF No. 253). The court ruled that there was no substantial justification for Mrs. Fields' delay or nondisclosure, and then awarded MFGPC's attorneys fees for the dispute in the amount of $7,579.50. (ECF No. 256 and 260). The court upheld Attorney

Rothschild's then billable rate of $465 per hour during the attorney fee assessment. (ECF Nos. 260 and 311).

For the trial on damages, MFGPC hired Berkeley Research Group ("BRG") to prove its economic damages using the expert testimony of Patrick Kilbourne and consulting expert Paul Shields. (ECF No. 307). BRG provided litigation support, analysis, an expert report with damages calculations, and expert testimony at the trial on damages. *Id*. During this three-day bench trial, Mr. Kilbourne offered three different approaches to calculating the damages, which he asserted would come out to $425,000; $916,000; and $465,000 respectively. *Id*. This court followed the third approach, and calculated that the amount of lost profits damages owed to MFGPC were actually $111,113. *Id*. Thus, the court ordered Mrs. Fields to pay $111,133 in lost profit damages plus $41,132 for unpaid invoices. *Id*.

***Present Motions for Attorney Fees***

I.  Mrs. Fields' Motion for Attorneys' Fees

After the conclusion of the case, Mrs. Fields filed a timely motion for attorney fees. (ECF No. 309). Mrs. Fields asks for attorney fees for fees that it incurred during the period when it opposed the injunction motion in the district court and then prosecuted its successful Tenth Circuit appeal, which reversed the injunction and greatly reduced Mrs. Fields' potential damages exposure at trial by taking the "perpetual license" theory off the table.

Mrs. Fields presents the attorney fees incurred during that time, as recorded by its primary law firm at the time, Storch Amini, PC, of New York. as: (a) $142,678.00 in time for legal services on this case from October 13, 2018 (the day MFGPC filed its initial TRO papers) through March 18, 2019 (the day before the injunction order was issues); and (b) $229,366.00 for legal services on this case from March 19, 2019 (the day the injunction order was issued)

through September 26, 2019 (the date of oral argument in the Tenth Circuit), for a total of $372,044. (ECF No. 310 at 2-4, and Exhs.).

Mrs. Fields then adjusted Storch Amini's hourly rates by 20% to reflect rates more common for lawyers of comparable skill and experience in the Salt Lake City market. That brought the requested amount to $297,635. *Id*. at ¶ 5. Next, Mrs. Fields reduced the fee by 25% to account for work done on other aspects of the case. This brought the requested sum to $223,226. *Id*. at ¶ 6.

Mrs. Fields also requests attorney fees for the fees recorded by its Utah counsel Kirton McConkie as $53,095 and $50,530, respectively, for the same two time periods, for a total of $103,625. *Id*. at ¶ 5 & 6. In order to roughly account for work done on other aspects of the case, Mrs. Fields discounts the sum by 20%, to $82,900. *Id*. at ¶ 8. In total, for both firms, Mrs. Fields requests an award of $306,126 in attorney fees. (ECF No. 309 at 10).

As justification for its request, Mrs. Fields cites to the "flexible and reasoned" approach that courts use for determining prevailing parties in attorney fee cases under Utah law, and argues that Mrs. Fields obtained a "comparative victory" and is thus the prevailing party under the License Agreement's attorney fees provision. *Id*. at 7-8. Then, Mrs. Fields asserts that its requested attorney fees are reasonable under Utah law, and that for the sake of this reasonability it is only asking for a portion of the fees (at rates reasonable to the Salt Lake City market) that it paid for a portion of the legal work actually performed in prosecuting this matter to a successful conclusion. *Id*. at 9.

MFGPC vehemently objects to Mrs. Fields' assertion that it is the prevailing party. MFGPC instead argues that it is the prevailing party in the case – a position it relies on in its own

6

motion for attorney fees. MFGPC also asserts that Mrs. Fields' requested fees are unreasonable and unsupportable under Utah law. (ECF No. 314).

II.     MFGPC Inc.'s Motion for Award of Attorneys' Fees to Prevailing Party

On September 9, 2021, MFGPC properly filed its own motion for attorney fees. (ECF Nos. 311-313). MFGPC seeks a total reimbursement of $1,042,820.95 as follows:

| Professional/Category | Type | Amount |
| --- | --- | --- |
| Parsons Behle & Latimer | Attorneys' Fees | $757,402.00 |
| Parsons Behle & Latimer | Expenses | 12,234.02 |
| Dumas & Associates, Lawyers | Attorneys' Fees | 195,945.00 |
| Dumas & Associates, Lawyers | Expenses | 3,763.72 |
| Nathan | Valuation Experts | 20,806.00 |
| Nathan | Expenses | 1,582.02 |
| Carolyn Dye | Attorneys' Fees | 675.00 |
| Putnam Group CPAs | Accounting for Discovery Requests | 5,870.00 |
| Berkeley Research Group | Expert Witness Hourly Fees | 41,512.00 |
| Berkeley Research Group | Expenses | 2,075.60 |
| Direct Expenses | Out-of-pocket Expenses | 955.59 |
| | Total: | $1,042,820.95 |

(ECF No. 311 at 1).

MFGPC argues that it is the prevailing party – that MFGPC won the case and that the only portion that it "lost" was one form of remedy, after summary judgment had already been given in MFGPC's favor. (ECF No. 311). MFGPC also asserts that its fees are reasonable under Utah law, and that the reason for the high fee amount is that MFGPC was compelled to defend itself in the case and then see the matter through to the end. *Id.*

Mrs. Fields objects to MFGPC's motion by once again arguing that Mrs. Fields is in fact the prevailing party in this case. (ECF No. 316) Mrs. Fields also asserts that MFGPC's requested fees are unreasonable and disproportionate. *Id.*

## DISCUSSION

To decide these motions, the court must first determine who the prevailing party is in this case. Only the prevailing party, as per the Agreement at § 22(k), may collect attorney fees. Once

7

the prevailing party is determined, the court must gauge the reasonableness of the attorney fees requested by that party under Utah law. The court addresses these issues as follows.

***Prevailing Party***

    I.    Law

Attorney fees are typically recoverable only if an applicable statute or contract so provides. *Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 782 (Utah 1994); *Mountain States Broad. Co. v. Neale*, 776 P.2d 643, 648 (Utah Ct. App. 1989) (Mountain States I), *clarified by Mountain States Broad. Co. v. Neale*, 783 P.2d 551 (Utah Ct. App. 1989) (mem. Decision on petition for reh'g) (*Mountain States II*). When a contract is what provides for attorney fees, such fees are only allowable per the terms of the contract. *A.K. & R. Whipple Plumbing and Heating v. Guy*, 94 P.3d 270, 272 (Utah 2004); *see e.g., Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988).

In the present case, the award of attorney fees is based on a contract. The Agreement, at § 22(k), says that if either party "is required to enforce this Agreement in any judicial proceeding or appeal thereof, the party prevailing in such, proceeding shall be entitled to reimbursement of its reasonable costs and expenses" by the other party. The court notes two important aspects of this attorney fees provision. The first is that attorney fees are to be rewarded to the prevailing party in a suit *enforcing* the contract. The second is that the language says *the* prevailing party, which the court interprets to mean that there can be only one prevailing party in a given lawsuit concerning the enforcement of this Agreement. Therefore, the court must determine which party in this case is the one prevailing.

Under Utah law, courts use a "flexible and reasoned approach" to determine the prevailing party in a case. *Neff*, 247 P.3d at 399-40*; Mountain States*, 783 P.2d at 557-58. This

approach permits "case-by-case evaluation" to handle situations where it is unclear which party – if either – prevailed. *See Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1239 (10th Cir. 2018) (citing *Neff* at 398); *R.T. Nielson Co. v. Cook*, 40 P.3d 1119, 1127 (Utah 2002). In applying this approach, "district courts are advised to consider relevant factors while not abandoning their common sense." *Grove Bus. Park LC v. Sealsource Int'l LLC*, 443 P.3d 764, 777 (Utah Ct. App. 2019). The factors relevant to the prevailing party determination are: "(1) the language of the attorney fee provision, (2) the number of claims brought by the parties, (3) the importance of each claim relative to the others and their significance considering the lawsuit as a whole, and (4) the amounts awarded on the various claims." *Wihongi v. Catania SFH LLC*, 472 P.3d 308, 311 (Utah Ct. App. 2020) (quoting *Grove Bus.*, 443 P.3d at 777). "The trial court may also consider whether interests of "justice and equity" weigh in favor or against an award of attorneys' fees." *Xlear*, 893 F.3d at 1239; *see Hull v. Wilcock*, 285 P.3d 815, 830-31 (Utah Ct. App. 2012).

Notably, the Utah Supreme Court has "specifically cautioned against considering only the net judgment in the case and stressed the importance of looking at the amounts actually sought and then balancing them proportionally with what was recovered." *Jordan Constr., Inc. v. Federal Nat'l Mortgage Ass'n*, 408 P.3d 296, 312 (Utah 2017) (cleaned up). Consequently, a party who is a net judgment winner might not be deemed the successful party. *Olsen v. Lund*, 246 P.3d 521, 523 (Utah Ct. App. 2010). What matters is "which party attained a 'comparative victory,' considering what a total victory would have meant for each party and what a true draw would look like." *J. Pochynok Co. v. Smedsrud*, 116 P.3d 353, 356 (Utah 2005).

II.   Analysis

9

This is a breach of contract case and MFGPC is clearly the net judgment winner. Although early on in the case it appeared as if Mrs. Fields might prevail, the subsequent Tenth Circuit decision and the summary judgment decisions in the district court clarified that MFGPC won the core dispute – the breach of contract. As a result, MFGPC eventually recovered $152,265. However, the net judgment winner is not necessarily also the prevailing party. The court now analyzes this further under the "flexible and reasoned approach."

As established above, the Agreement provides for attorney fees for *the* prevailing party in a lawsuit to *enforce* the contract. On its face, it appears that the net judgment winner, MFGPC, would contractually be the prevailing party because it won the breach of contract dispute. However, using the "flexible and reasoned" approach, the court also considers the history of this case as follows.

At the beginning of this case, Mrs. Fields filed a complaint that MFGPC breached the Agreement, and therefore Mrs. Fields sought attorney fees and a declaration that the Agreement had been validly terminated. In response, MFGPC filed a counterclaim for breach of contract and sought a preliminary injunction to prevent the termination. The district court then denied MFGPC's request for preliminary injunction, granted a motion to dismiss MFGPC's counterclaims, and allowed Mrs. Fields to voluntarily dismiss its claim for declaratory relief. However, the motion to dismiss decision was appealed and the Tenth Circuit reversed the dismissal of MFGPC's breach of contract claim and remanded.

On remand, the parties filed cross motions for summary judgment. In doing so, both attempted to "properly" enforce the Agreement. Mrs. Fields' summary judgment was denied by the district court, while MFGPC's partial summary judgment was granted. The district court held that Mrs. Fields' termination letter was a breach of contract and that the remaining issue to

decide was remedies. Therefore, MFGPC succeeded on its breach of contract claim and defeated Mrs. Fields' breach of contract claim. In this suit to enforce the Agreement, it is MFGPC who succeeded. Again, according to the language of the contract, it appears then that MFGPC should be considered the prevailing party. However, the remedies phase of this case complicates matters.

As per the Agreement at § 22(i), MFGPC moved for a preliminary injunction against Mrs. Fields. This was the first form of relief that MFGPC sought – before the trial for damages. In its preliminary injunction motion, MFGPC took the position that the Agreement provided for a "perpetual license" from Mrs. Fields – absent a material breach by MFGPC. The district court agreed with MFGPC, but Mrs. Fields appealed the decision and the Tenth Circuit disagreed. The Tenth Circuit held that the Agreement could be terminated by notice at the end of each term. Therefore, the Agreement would still have been validly terminated by Mrs. Fields effective April 30, 2018, limiting MFGPC's damages to its lost profits through that date. In accordance with that holding, the Tenth Circuit reversed the preliminary injunction.

This decision was important for Mrs. Fields because it limited the amount of damages MFGPC could collect, upheld Mrs. Fields' interpretation of that portion of the Agreement, and allowed for Mrs. Fields to be free of the Agreement as of April 30, 2018. However, this was only a decision on one form of relief that MFGPC sought after MFGPC had already succeeded as to the crux of the case – the breach of contract claims. Succeeding on a defense against a claim for relief is not the same as succeeding on the claim at the crux of the case itself – this success merely mitigates the negative effects Mrs. Fields is to face in the wake of having lost the breach of contract case.

Eventually, this court held a bench trial to determine the amount of damages that Mrs. Fields owed to MFGPC for breaching the Agreement. The court determined then that Mrs. Fields owed MFGPC $111,133 in lost profit damages and $41,132 for unpaid invoices. This aspect of the case raises some concern with the court because at the damages trial, MFGPC thought that, depending on the approach used, it could recover one of the following sums: $425,000; $916,000; or $465,000. The court ended up granting only $111,133 in lost profit damages, which is just about 26% of MFGPC's lowest estimate for deserved damages. That is not a resounding success for MFGPC.

Ultimately, what matters is which party is the comparative victor – a decision that this court must make with common sense and "justice and equity" in mind. The common-sense answer is that MFGPC is the prevailing party. MFGPC repeatedly won at nearly every turn – with the notable exception of the reversal of the preliminary injunction. However, losing on one form of relief does not negate MFGPC's overall success in this case. The court does acknowledge that Mrs. Fields' success concerning the preliminary injunction resulted in the amount of damages that MFGPC could collect being greatly reduced. That is not an insignificant factor. However, in addition to the factors discussed above, the court must consider the following two things – (1) the language of the Agreement that provides for attorney fees for *the* prevailing party in a suit enforcing the contract, which the court interprets to mean that the court must choose a prevailing party, and (2) the court believes that it would go against the interests of justice and equity, as well as usurp common sense, to deem the party who lost the breach of contract case on summary judgment to be the prevailing party. Therefore, the court finds, upon considering the case as a whole, that MFGPC is the prevailing party and, as per the Agreement, MFGPC is entitled to reasonable attorney fees.

*Attorney Fees for MFGPC*

"Under Utah law, 'an award of attorney fees must be supported by evidence in the record.'" *Xlear*, 893 F.3d at 1241 (quoting *Dixie State Bank*, 764 P.2d at 988 (Utah 1988). "Except in the most simple cases, the evidence should include the hours spent on the case, the hourly rate or rates charged for those hours, and usual and customary rates for such work. *Id*. (quoting *U.S.A. United Staffing All., LLC v. Workers' Comp. Fund*, 213 P.3d 20, 30 (Utah Ct. App. 2009)). "Additionally, the evidence submitted in support of the fee request should permit the district court to assess four questions central to the reasonableness inquiry:

> [T]he evidence submitted in support of the fee request should permit the district court to assess four questions central to the reasonableness inquiry:
> 1. What legal work was actually performed?
> 2. How much of the work performed was reasonably necessary to adequately prosecute [or defend] the matter?
> 3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services?
> 4. Are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?

*Id*. at 1241-42 (quoting *Dixie State Bank*, 764 P.2d at 990); *see also Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir. 2006) ("A reasonable fee is the product of a reasonable rate in the relevant community multiplied by the number of hours reasonably spend on the litigation.") "The appropriateness of the work actually performed and of the attorney's billing rate is evaluated before a reasonable fee is set." *Id*. (quoting *Dixie State Bank*, 764 P.2d at 990). "In addition, although the amount in controversy can be a factor in determining a reasonable fee, care should be used in putting much reliance on this factor. It is a simple fact in a lawyer's life that it takes about the same amount of time to collect a note in the amount of $1,000 as it takes to collect a note for $100,000." *Dixie State Bank*, 764 P.2d at 990.

In this case, the court will address each of the central questions to the reasonableness inquiry in turn – with special attention given to question two, due to the parties' disputes concerning the amount of work that MFGPC may be entitled to attorney fees for.

The first central question is: what legal work was actually performed? The legal work performed on MFGPC's behalf is made abundantly clear by the Lindley declaration and accompanying exhibits. (ECF No. 313). The time sheets and invoices are precise and detailed. The court finds that these hours submitted are reasonable for the legal work that was actually performed.

The second central question is: how much of the work performed was reasonably necessary to adequately prosecute [or defend] the matter? The parties have two key disputes concerning this question. They dispute (1) whether the amount of time spent on the litigation by MFGPC was a reasonable response to Mrs. Fields' tactics and course of action, and (2) whether MFGPC can recover fees for legal work that was unsuccessful.

As to the first dispute, the court finds that the amount of time that MFGPC spent on its litigation is reasonable. This has been a long and complex case. At nearly every juncture in this litigation, MFGPC and its professionals were faced with the choice to respond or give up legitimate contractual rights. The only exception to that is the post-summary judgment preliminary injunction litigation. On the appeal of this preliminary injunction, the Tenth Circuit rejected MFGPC's "perpetual license" theory and clarified that the Agreement ended on April 30, 2018. Therefore, MFGPC seeking a preliminary injunction in October of 2018 was not necessary. However, due to MFGPC's belief at the time that the Agreement gave it a "perpetual license," the court finds that litigation reasonable. Additionally, MFGPC's preliminary

injunction litigation is permissible procedurally and contractually – as per the Agreement at § 22(i).

As to the second dispute, the court finds that MFGPC cannot recover fees for the unsuccessful post-summary judgment, preliminary injunction litigation. Utah law requires that a party seeking attorney fees separate "successful claims for which there may be an entitlement to attorney fees, and unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful." *Foote v. Clark*, 962 P.2d 52, 57 (Utah 1998) (cleaned up). There is a small exception to this if the unsuccessful claim was "relevant and necessary with respect to the other issues in the case upon which the party was successful," making the complex issues inextricably intertwined. *Stevensen 3rd East, LC v. Watts*, 210 P.3d 977, 993 (Utah Ct. App. 2009). The law is clear that the party seeking fees does not have to properly separate its successful and unsuccessful claims if the claims "are *so inextricably linked that the fees cannot be separated.*" *Dale K. Barker Co., PC v. Bushnell*, 237 P.3d 903, 9909 (Utah Ct. App. 2010) (emphasis added).

In this case, MFGPC based its preliminary injunction litigation on the theory that the Agreement gave it a "perpetual license." This is an issue of contract interpretation that had to be decided at some point following the summary judgment decision. As it happened, this issue was clarified in the Tenth Circuit appeal of the preliminary injunction that was initially granted to MFGPC. It did not have to be this way. MFGPC could have interpreted the Agreement as the Tenth Circuit eventually did, or MFGPC could have litigated the "perpetual license" issue during the damages trial – which definitely would have made this issue inextricably linked to litigation of a successful claim.

This is not to say that it was improper for MFGPC to litigate the preliminary injunction and bring up the "perpetual license" issue at that time. However, it turned out to be a poor choice because it separated this issue and this claim from the successful issues and claims when it did not have to. It also added legal time to this case that would not have been spent if MFGPC had only pursued a damages case. Therefore, the court finds that the preliminary injunction litigation was not a "necessary and unavoidable step" in the litigation, and, since it is easy to separate the successful and unsuccessful claims here, the court finds that MFGPC cannot recover fees for the preliminary injunction litigation. However, the court does find that the rest of the work performed, and recorded, by MFGPC and its professionals in this case was reasonable and necessary.

Next, the court turns to the third central question in the reasonableness inquiry: is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services? The court finds here that the rates for MFGPC's attorneys are reasonable. In a prior ruling in this case, the court upheld Attorney Rothschild's then billable rate of $465 per hour. (ECF No. 260). Additionally, when Mrs. Fields thought it was the prevailing party, it filed a motion for attorney fees in which it asserted that $500 per hour was an appropriate market rate – which the court agreed with. (ECF Nos. 54 and 65). MFGPC is now asking for attorney fees at billing rates that are all below $500. These rates are reasonable and consistent with local market rates.

Finally, the court considers the fourth central question to the reasonableness inquiry: are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility? There is one aspect of this case that the court does think necessitates some further evaluation, and that is the size of the recovered damages versus the

attorney fees requested. MFGPC's lost profit damages were $111,113 and the attorney fees it seeks are $1,042,820.95. But, as noted above, "although the amount in controversy can be a factor in determining a reasonable fee, care should be used in putting much reliance on this factor. It is a simple fact in a lawyer's life that it takes about the same amount of time to collect a note in the amount of $1,000 as it takes to collect a note for $100,000." *Dixie State Bank*, 764 P.2d at 990. Here, the court does not put much reliance on this factor – especially since the attorney fee amount will be reduced by the amount spent on the preliminary injunction litigation. In light of the circumstances and complexity of this case, as well as the reduced attorney fee amount, the court finds that the rest of the amount of attorney fees requested by MFGPC is reasonable.

*Calculation of MFGPC's Fees*

In accordance with the above reasoning, the court has reviewed the exhibits submitted by MFGPC in ECF No. 313 and adjusted the calculation of fees that Mrs. Fields owes to MFGPC by subtracting amounts that were clearly and directly related to MFGPC's litigation of its unsuccessful preliminary injunction. In its calculations, the court split in half the amounts requested on Parsons Behle & Latimer timesheet entries where work was done pertaining to both the preliminary injunction and other aspects of the case, and there was no clear way to determine how much time was spent on each part. The court concludes that the attorney fees owed to Parsons Behle & Latimer are to be reduced by $230,336.25; that the expenses owed to Parsons Behle & Latimer are to be reduced by $1,052.26; and that the Direct Expenses requested in the amount of $955.59 are to be eliminated entirely. This reduces the total amount that Mrs. Fields owes to MFGPC from $1,042,820.95 to $810,476.85.

17

## **CONCLUSION**

Based on the above reasoning, the court DENIES Mrs. Fields' motion for attorney fees and GRANTS IN PART MFGPC's motion for attorney fees. The court ORDERS Mrs. Fields to pay MFGPC's requested fees in the amount of $810,476.85.

DATED this 2nd day of November, 2021.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge